# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| JOHN HECK, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ORION GROUP HOLDINGS, INC., MARK R. STAUFFER, CHRISTOPHER J. DEALMEIDA, and ROBERT L. TABB, <br><br> Defendants. | Case No.: DRAFT <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff John Heck ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Orion Group Holdings, Inc. ("Orion" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Orion; and (c) review of other publicly available information concerning Orion.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Orion securities between March 13, 2018 and March 26, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Orion is purportedly a specialty construction company that operates in United Stataes, Canada, and the Caribbean Basin. Its marine segment services include marine transportation facility construction, marine pipeline construction, and dredging of waterways, channels, and ports. Its concrete segment provides turnkey concrete construction services across the light commercial, structural, and other associated business areas.

3. On October 18, 2018, the Company announced that it expected a significant revenue shortfall for third quarter 2018 due to production delays and that its Chief Financial Officer had resigned.

4. On this news, the Company's share price fell $0.68, or over 10%, to close at $6.11 per share on October 18, 2018, on unusually heavy trading volume.

5. On March 18, 2019, the Company revealed that it would be unable to timely file its annual report due to "extended evaluations of goodwill impairment testing and income tax adjustments, among other things." The Company also announced that it "expects that a significant change in results of operations from the corresponding period for the last fiscal year will be

reflected in its financial statements."

6. On this news, the Company's share price fell $0.52, or over 12%, to close at $3.72 per share on March 18, 2019, on unusually heavy trading volume.

7. On March 26, 2019, the Company reported $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge.

8. On this news, the Company's share price fell $0.22, or nearly 7%, to close at $2.97 per share on March 26, 2019, on unusually heavy trading volume.

9. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had overstated goodwill in certain periods; (2) that the Company had overstated accounts receivable in certain periods; (3) that the Company lacked effective internal control over financial reporting, including over goodwill impairment testing and allowance for doubtful accounts; (4) that, as a result, the required adjustments would materially impact the Company's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud

or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this district.

14. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15. Plaintiff John Heck, as set forth in the accompanying certification, incorporated by reference herein, purchased Orion securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16. Defendant Orion is incorporated under the laws of Delaware with its principal executive offices located in Houston, Texas. Orion's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ORN."

17. Defendant Mark R. Stauffer ("Stauffer") was the Chief Executive Officer of the Company at all relevant times.

18. Defendant Christopher J. DeAlmeida ("DeAlmeida") was the Chief Financial Officer ("CFO") of the Company from February 2014 to November 2, 2018.

19. Defendant Robert L. Tabb ("Tabb") is the Chief Financial Officer of the Company, having previously served as interim CFO since November 2, 2018.

20. Defendants Stauffer, DeAlmeida, and Tabb, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and

opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21. Orion is purportedly a specialty construction company that operates in the United States, Canada, and the Caribbean Basin. Its marine segment services include marine transportation facility construction, marine pipeline construction, and dredging of waterways, channels, and ports. Its concrete segment provides turnkey concrete construction services across the light commercial, structural, and other associated business areas.

### Materially False and Misleading Statements Issued During the Class Period

22. The Class Period begins on March 13, 2018. On that day, the Company filed its annual report on Form 10-K for the period ended December 31, 2017 (the "2017 10-K"). Therein, the Company disclosed certain risk factors affecting its business, stating in relevant part:

> ***We could suffer contract losses if we fail to accurately estimate our costs or fail to execute within our cost estimates on fixed-price, lump-sum contracts.***
>
> Much of our revenue is derived from fixed-price, lump-sum contracts. Under these contracts, we perform our services and execute our projects at a fixed price and where, as a result, we could benefit from cost savings, but we may be unable to recover any cost overruns. Fixed-price contracts carry inherent risks, including risks of losses from underestimating costs, operational difficulties and other factors that may occur over the contract period. If our cost estimates for a contract are inaccurate, or if we do not execute the contract within our cost estimates, we may incur losses or the project may not be as profitable as we expected. In addition, we are sometimes required to incur costs in connection with modifications to a contract (change orders) that may not be approved by the customer as to scope and/or price, or to incur unanticipated costs, including costs for customer-caused delays, errors in specifications or designs, or contract suspension or termination that we may not be able to recover. These, in turn, could have a material adverse effect on our business, operating results and financial condition. The revenue, cost and gross profit realized on such contracts can vary, sometimes substantially, from the original projections due to changes in a variety of factors, such as:

- failure to properly estimate costs of engineering, design, material, equipment or labor;

- unanticipated technical problems with the structures or services being supplied by us, which may require that we spend our own funds to remedy the problem;

- project modifications creating unanticipated costs;

- differing site conditions;

- changes in the costs of equipment, materials, labor or subcontractors;

- our suppliers' or subcontractors' failure to perform;

- difficulties in our customers obtaining required governmental permits or approvals;

- changes in local laws and regulations;

- delays caused by local weather conditions; and

- exacerbation of any one or more of these factors as projects grow in size and complexity.

These risks increase if the project is of a long-term duration because of the elevated risk that the circumstances upon which we based our original bid will change in a manner that increases costs. In addition, we sometimes bear the risk of delays caused by unexpected conditions or events.

23. As to goodwill and impairment testing, the 2017 10-K stated, in relevant part:

We determined that our operations comprise two reporting units for goodwill impairment testing, which matches our two operating segments for financial reporting.

We assess the fair value of our reporting unit based on a weighted average of valuations based on market multiples, discounted cash flows, and consideration of our market capitalization. The key assumptions used in the discounted cash flow valuations are discount rates and perpetual growth rates applied to cash flow projections. Also inherent in the discounted cash flow valuation models are past performance, projections and assumptions in current operating plans, and revenue growth rates over the next five years. These assumptions contemplate business, market and overall economic conditions. We also consider assumptions that market participants may use.

As required, annual impairment testing of goodwill is performed as of October 31 of each year or whenever circumstances arise that indicate a possible impairment might exist. Based on this testing, we determined that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill was not impaired, and no events have occurred since that date that would

require an interim impairment test. In the future, our estimated fair value could be negatively impacted by extended declines in our stock price, changes in macroeconomic indicators, sustained operating losses, and other factors which may affect our assessment of fair value.

24. As to allowance for doubtful accounts, the 2017 10-K stated, in relevant part:

[T]he Company evaluates its contract receivables and costs in excess of billings and thoroughly reviews historical collection experience, the financial condition of its customers, billing disputes and other factors. The Company writes off uncollectible accounts receivable against the allowance for doubtful accounts if it is determined that the amounts will not be collected or if a settlement is reached for an amount that is less than the carrying value. As of December 31, 2017 and 2016, the Company had not recorded an allowance for doubtful accounts.

25. On May 4, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018, in which it reported $136.8 million revenue, $4.1 million net income, $69.48 million goodwill, and $72.71 million accounts receivable. The report also stated that "[n]o indicators of goodwill impairment were identified during the three months ended March 31, 2018."

26. On August 3, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, in which it reported $159.8 million revenue, $2.25 million net income, $69.48 million goodwill, and $77.02 million accounts receivable. The report also stated that "[n]o indicators of goodwill impairment were identified during the six months ended June 30, 2018."

27. The above statements identified in ¶¶22-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had overstated goodwill in certain periods; (2) that the Company had overstated accounts receivable in certain periods; (3) that the Company lacked effective internal control over financial reporting, including over goodwill impairment testing and allowance for doubtful accounts; (4) that, as a result, the required adjustments would materially impact the Company's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

28. The truth began to emerge on October 18, 2018 when the Company announced that

it expected a significant revenue shortfall for third quarter 2018 due to production delays and that it may perform an interim goodwill impairment test. In a press release, the Company stated, in relevant part:

> During the third quarter 2018, the Company experienced unanticipated delays in commencing certain work due to customer schedules. The Company also experienced significant production delays in its Concrete segment, primarily due to continuous rain throughout its market areas in Texas, particularly during September. As a result, the timing of certain projects and opportunities has changed and the Company will see significant revenue shortfall in both segments, which will cause third quarter 2018 results to fall significantly below its expectations, anticipating a loss of ($0.20) – ($0.25) per share. Please note that these third quarter 2018 results are preliminary and therefore subject to the completion of customary quarterly closing and review procedures, including potentially performing an interim Goodwill test. Final third quarter results are expected to be announced on November 1, 2018.

29. The same day, the Company announced that its Chief Financial Officer, Defendant DeAlmeida, had resigned.

30. On this news, the Company's share price fell $0.68, or over 10%, to close at $6.11 per share on October 18, 2018, on unusually heavy trading volume.

31. On November 2, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, in which it reported $125.1 million revenue, $6.36 million net loss, $69.48 million goodwill, and $81.18 million accounts receivable. As to goodwill impairment testing, the report stated, in relevant part:

> During the three months ended September 30, 2018, the Company identified potential indicators of impairment to goodwill for both its marine and concrete reporting units, including operating losses within each segment and adjusted forecasted earnings for the full fiscal year. As such, the Company performed a qualitative assessment and certain sensitivity analysis to determine whether it was more likely than not that goodwill was impaired. ***After evaluating all events, circumstances and factors which could affect the significant inputs used to determine fair value, the Company determined it was not more likely than not that an impairment existed at either reporting unit.*** The Company did not progress to subsequent steps of impairment testing and plans to perform its annual impairment testing as of October 31.

(Emphasis added.)

32. The above statements identified in ¶¶28-29,31 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations,

7

and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had overstated goodwill in certain periods; (2) that the Company had overstated accounts receivable in certain periods; (3) that the Company lacked effective internal control over financial reporting, including over goodwill impairment testing and allowance for doubtful accounts; (4) that, as a result, the required adjustments would materially impact the Company's financial results; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

33. On March 18, 2019, the Company revealed that it would be unable to timely file its annual report due to "extended evaluations of goodwill impairment testing and income tax adjustments, among other things" and that it expected to report a net loss. In a Form 12b-25 Notification of Late Filing filed with the SEC, the Company stated, in relevant part:

> Orion Group Holdings, Inc. (the "Company") is unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the year ended December 31, 2018 ("Annual Report"), within the prescribed time period (by March 18, 2019) resulting from unanticipated delays that have impacted our ability to timely prepare our financial statements and complete our assessment of the effectiveness of internal controls over financial reporting in order for our auditors to perform all their required procedures. The delays resulted from extended evaluations of goodwill impairment testing and income tax adjustments, among other things. The Company expects to file its Annual Report on Form 10-K within the prescribed time allowed pursuant to Rule 12b-25 (by April 2, 2019).
>
> As a result of the matters discussed in Part III above, the Company is not in a position to provide any specific estimate or anticipated changes in results of operations from the corresponding period for the last fiscal year that will be reflected in the financial statements to be included in the 2018 Annual Report on Form 10-K.
>
> The Company expects that a significant change in results of operations from the corresponding period for the last fiscal year will be reflected in its financial statements. The Company expects to report an operating loss and net loss for the year ended December 31, 2018. These expected results are significantly lower than the operating income and net income reported in the prior fiscal year, primarily due to: (1) the impairment of goodwill during the year ended December 31, 2018, as a result of a decline in market capitalization, (2) unfavorable changes in our estimates on construction projects in both the marine and concrete segments, and (3) taking a reserve on certain customer disputed accounts receivables.

34. On this news, the Company's share price fell $0.52, or over 12%, to close at $3.72

per share on March 18, 2019, on unusually heavy trading volume.

35. On March 26, 2019, the Company reported $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge. In a press release announcing the fourth quarter and full year 2018 financial results, the Company stated, in relevant part:

**Fourth Quarter Highlights**

- Contract revenues were $99.2 million for the fourth quarter of 2018 compared to $162.2 million for the fourth quarter of 2017. Revenues were impacted by continued negative weather patterns in Texas, as well as adjustments of estimates on certain projects.

- Operating loss was $104.8 million for the fourth quarter of 2018 compared to operating income of $10.8 million for the fourth quarter of 2017.

- Net loss was $94.4 million ($3.32 diluted loss per share) for the fourth quarter of 2018 compared to net income of $9.5 million ($0.34 diluted earnings per share) for the fourth quarter of 2017.

- The fourth quarter 2018 operating loss and net loss included non-cash charges totaling $96.5 million ($2.65 per diluted share) related to the impairment of goodwill ($69.5 million), customer-driven cost overruns on certain projects ($22.8 million), and reserve on disputed accounts receivables ($4.3 million). (Please see page 9 of this release for a reconciliation of Adjusted Net Loss.)

- EBITDA, adjusted to exclude the impact of the aforementioned charges and other non-recurring costs, was $2.5 million in the fourth quarter of 2018, which compares to adjusted EBITDA of $17.9 million for the fourth quarter of 2017. (Please see page 10 of this release for an explanation of EBITDA, Adjusted EBITDA and a reconciliation to the nearest GAAP measure.)

- Backlog expanded to an all-time high of $441 million on a fourth quarter book-to-bill of 1.14x.

"We remain focused on the operational transformation underway throughout our Company, which we believe will become increasingly evident as 2019 progresses," stated Mark Stauffer, Orion Group Holding's President and Chief Executive Officer. "Our reported results for the fourth quarter were impacted by shifts in the timing of the commencement of several Marine projects, as well as weather-related delays for our concrete operations as a result of heavy rains and disruptive weather patterns throughout our key Texas markets. *These were issues that began in the third quarter of 2018 and, unfortunately, they persisted through the final months of the year, which we indicated were a risk when we reported our third quarter results in November. Additionally, our fourth quarter results included non-cash charges for the impairment of goodwill, as well as a write-down of revenues as a*

*result of losses in our Marine segment resulting from cost overruns on certain projects created by customer schedules, customer delays, and other customer impacts to production.* We are seeking recovery through change orders for these cost overruns, however we cannot assure recovery at this time."

(Emphasis added.)

36. On this news, the Company's share price fell $0.22, or nearly 7%, to close at $2.97 per share on March 26, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Orion securities between March 13, 2018 and March 26, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Orion's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Orion common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Orion or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Orion; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

43. The market for Orion's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Orion's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Orion's securities relying upon the integrity of the market price of the Company's securities and market information relating to Orion, and have been damaged thereby.

44. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Orion's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the

truth about Orion's business, operations, and prospects as alleged herein.

45. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Orion's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

46. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

47. During the Class Period, Plaintiff and the Class purchased Orion's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

48. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Orion, their control over, and/or

receipt and/or modification of Orion's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Orion, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

49. The market for Orion's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Orion's securities traded at artificially inflated prices during the Class Period. On August 6, 2018, the Company's share price closed at a Class Period high of $9.61 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Orion's securities and market information relating to Orion, and have been damaged thereby.

50. During the Class Period, the artificial inflation of Orion's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Orion's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Orion and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

51. At all relevant times, the market for Orion's securities was an efficient market for the following reasons, among others:

(a) Orion shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Orion filed periodic public reports with the SEC and/or the

NYSE;

(c) Orion regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Orion was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

52. As a result of the foregoing, the market for Orion's securities promptly digested current information regarding Orion from all publicly available sources and reflected such information in Orion's share price. Under these circumstances, all purchasers of Orion's securities during the Class Period suffered similar injury through their purchase of Orion's securities at artificially inflated prices and a presumption of reliance applies.

53. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

54. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and

conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Orion who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Orion's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

57. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Orion's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Orion's financial well-being and prospects, as specified herein.

59. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Orion's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Orion and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

60. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

61. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Orion's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Orion's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Orion's securities during the Class Period at artificially high prices and were damaged thereby.

63. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Orion was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Orion securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

64. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

66. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67. Individual Defendants acted as controlling persons of Orion within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69. As set forth above, Orion and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: April 11, 2019

By:  /s/ Joe Kendall

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: 214-744-3000
Facsimile: 214-744-3015
Email: jkendall@kendalllawgroup.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Attorneys for Plaintiff John Heck*