# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN HECK, Individually and | § | |
| On Behalf of All Others Similarly Situated, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL NO. 4:19-cv-01337 |
| | § | |
| ORION GROUP HOLDINGS, INC., | § | |
| MARK R. STAUFFER, CHRISTOPHER J. | § | |
| DEALMEIDA and ROBERT L. TABB | § | |
| Defendants | § | |
| | § | |

———

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

———

ROBERT B. BIECK, JR. (*Attorney in Charge*)
ALEXANDER N. BRECKINRIDGE V
THOMAS E. SLATTERY
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8000
Fax: (504) 582-8583

JAMES ARDOIN
JONES WALKER, LLP
811 Main Street, Suite 2900
Houston, TX 77002
Phone: (713) 437-1811
Fax: (713) 437-1946

**ATTORNEYS FOR DEFENDANTS,
ORION GROUP HOLDINGS, INC.,
MARK R. STAUFFER, CHRISTOPHER J.
DEALMEIDA, AND ROBERT L. TABB**

# **TABLE OF CONTENTS**

**Page**

I. SUMMARY OF ARGUMENT ................................................................................ 1

II. BACKGROUND ............................................................................................... 3

III. LEGAL STANDARD ....................................................................................... 4

IV. LAW AND ARGUMENT .................................................................................. 6

      A.      THE ABSENCE OF REQUIRED PARTICULARS ................................................. 6

           1.      **The Amended Complaint's Allegations do not Support Scienter.** ................. 6

                 *a.*      *The Confidential Witness Allegations do not Support Scienter.* ............... 7

                 *b.*      *Positions at Orion are Insufficient to Support Scienter.* ........................ 10

                 *c.*      *GAAP Violations do not Support Scienter.* ............................................ 11

                 *d.*      *Universal Profit Motives do not Support Scienter.* ................................ 14

                 *e.*      *Signing Financial Statements does not Support Scienter.* ..................... 14

           2.      **The Amended Complaint Does Not Specify How the Statements are False** ........ 15

           3.      **The Amended Complaint Improperly Relies on "Group Pleading."** ............ 16

           4.      **The Timeline Reinforces the Need for Specificity.** ....................................... 18

           5.      **The Amended Complaint Does Not Plead Loss Causation.** ......................... 19

      B.      MISREPRESENTATIONS MISCHARACTERIZED AS OMISSIONS ....................................... 20

      C.      PSLRA'S SAFE HARBOR PROVISIONS APPLIED TO QUOTED STATEMENTS ............ 22

VI. CONCLUSION ................................................................................................. 25

CERTIFICATE OF SERVICE .................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC Arbitrage v. Tchuruk,*
   291 F.3d 336 (5th Cir. 2002) ................................................................... 7, 23

*Abrams v. Baker Hughes Inc.,*
   292 F.3d 424 (5th Cir. 2002) ........................................................... 10, 14, 17

*Affiliated Ute Citizens of Utah v. United States,*
   406 U.S. 128 (1972) ................................................................... 2, 20, 21

*In re Alamosa Holdings, Inc. Sec. Litig.,*
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ................................................ 15

*American Gen. Ins. Co. v. Webster,*
   118 SW 2d 1082 (Tex. Civ. App. Fort Worth 1938) ......................... 18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................... 4, 5

*Basic v. Levinson,*
   485 U.S. 224 (1988) ...................................................................... 20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................... 4, 5

*In re Blockbuster Inc. Sec. Litig.,*
   2004 U.S. Dist. LEXIS 7173 (N.D. Tex. Apr. 26, 2004) ................. 23

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs.,*
   497 F.3d 546 (5th Cir. 2007) ......................................................... 7, 15

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) .............................................................. 3

*Collmer v. United States Liquids, Inc.,*
   268 F. Supp. 2d 718 (S.D. Tex. 2001) ......................................... 16, 18

*In re Dynegy, Inc. Sec. Litig.,*
   339 F. Supp. 2d 804 (S.D. Tex. 2004) (Lake, J.) .......................... 6, 11

*In re Entrust Sec. Litig.,*
   2002 U.S. Dist. LEXIS 26669 (E.D. Tex. Sept. 30, 2002) .............. 15

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976) .......................................................................... 6

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011) ............................................................................. 12

*In re Fannie Mae 2008 Sec. Litig.*,
    742 F. Supp. 2d 382 (S.D.N.Y. 2010) .............................................................. 11

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ............................................................................. 5

*Fitzpatrick v. Uni-Pixel, Inc.*,
    35 F. Supp. 3d 813, 833 (S.D. Tex. 2014) (Lake, J.) ................................. 19, 20

*Gen. Partner Glenn Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) ............................................................................. 12

*Goldstein v. MCI World Com*,
    340 F.3d 238 (5th Cir. 2003) ............................................................................ 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ..................................................................................... 5, 20

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ............................................................................. 7

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ............................................................. 6–10, 12, 14

*Kurtzman v. Compaq Comput. Corp.*,
    2000 U.S. Dist. LEXIS 22476 (S.D. Tex. Dec. 12, 2000) .............................. 23

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
    2004 U.S. Dist. LEXIS 3059 (S.D.N.Y. Feb. 27, 2004) ................................. 11

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ........................................................................ 3, 11

*McCasland v. FormFactor, Inc.*,
    2008 U.S. Dist. LEXIS 60544 (N.D. Cal. July 25, 2008) ............................... 15

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ........................................................................... 11

*Mun. Employees' Ret. Sys. v. Pier 1 Imps., Inc.*,
    935 F.3d 424 (5th Cir. 2019) ........................................................................... 14

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
    424 F. Supp. 2d 880 (N.D. Tex. 2005) ....................................................... 22, 25

*Omnicare, Inc. v. Laborers' Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. __, 135 S. Ct. 1318 (2015) ............................................................... 12

*Owens v. Jastrow,*
    789 F.3d 529 (5th Cir. 2015) ................................................................................ 5, 16

*In re Paracelsus Corp. Sec. Litig.,*
    61 F. Supp. 2d 591 (S.D. Tex. 1998) ........................................................................ 13

*Plaisance v. Schiller,*
    2019 U.S. Dist. LEXIS 42073 (S.D. Tex. Mar. 14, 2019) (Lake, J.) ............................. 5, 23

*R2 Investments LDC v. Phillips,*
    401 F.3d 638 (5th Cir. 2005) ................................................................................... 17

*Shushany v. Allwaste, Inc.,*
    992 F.2d 517 (5th Cir. 1993) ................................................................................ 6, 12

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*
    365 F.3d 353 (5th Cir. 2004) ........................................................................ 16, 17, 25

*Stephens v. Uranium Energy Corp.,*
    2016 U.S. Dist. LEXIS 91897 (S.D. Tex., July 15, 2016) ................................................ 16

*Stockman v. Flotek Indus.,*
    2010 U.S. Dist. LEXIS 103196 (S.D. Tex. Sep. 29, 2010) (Lake, J.) ........................ 13, 18, 22, 25

*Tabor v. Bodisen Biotech, Inc.,*
    579 F. Supp. 2d 438 (S.D.N.Y. 2008) ........................................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ....................................................................................... 3, 6, 7

*In re Tetra Techs., Inc. Sec. Litig.,*
    2009 U.S. Dist. LEXIS 126687 (S.D. Tex. July 9, 2009) ................................................. 24

*Thor Power Tool Co. v. Comm'r of Internal Revenue,*
    439 U.S. 522 (1979) ............................................................................................. 16

*Young v. Nationwide Life Ins. Co.,*
    183 F.R.D. 502 (S.D. Tex. 1998) .......................................................................... 20, 21

**Statutes**

15 U.S.C. § 78u-4(b)(1) ................................................................................................ 5

Private Securities Litigation Reform Act ....................................................... 5, 6, 15–17, 22

S.E.C. Rule 10b-5 (17 C.F.R. § 240.10b-5) .................................................................... 4, 5

Securities Exchange Act Section 10(b) (15 U.S.C. §78j (b)) .......................................... 4–6, 25

Securities Exchange Act Section 20(b) (15 U.S.C. § 78t (a)) ................................................. 4

**Other Authorities**

Garner, Bryan A. *Garner on Language and Writing: Selected Essays and Speeches of Bryan A. Garner*, American Bar Association (2009) .......................................................................... 18

Defendants Orion Group Holdings, Inc. ("Orion" or the "Company"), Orion CEO Mark R. Stauffer, CFO Robert L. Tabb, and former CFO Christopher J. DeAlmeida (collectively, "the Individual Defendants") together file this Motion to Dismiss Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws filed April 11, 2019 (Docket #23) (the "Amended Complaint"), and ask this Court dismiss the Amended Complaint with prejudice.

## I. SUMMARY OF ARGUMENT

This lawsuit rests entirely on the false premise that an announcement of unexpected bad news by a public company necessarily evidences fraud by that company's management.

Defendant Orion is a publicly traded, specialty construction company. In October last year, Orion announced anticipated revenue shortfalls due to unexpected customer delays in project scheduling and the effect of unusually severe weather. These revenue shortfalls were the most significant contributing factor to the Company's reporting of an operating loss for the quarter. In November, Orion announced that, as part of its normal impairment evaluation, it had identified potential indications of impairment to the company's goodwill—a type of intangible corporate asset—based on these operating losses.  Given the indicators noted, Orion applied U.S. Generally Accepted Accounting Principles ("GAAP") to assess whether an impairment existed, and determined that the then-existing facts did not indicate a probability of impairment. Therefore, and appropriately, no goodwill impairment charge was recognized for the third quarter of 2018.

Earlier this year, on March 26, Orion reported a $94.4 million net loss for the fourth quarter of 2018, including a $69.5 million goodwill impairment charge. Plaintiff filed his Original Complaint 16 days later on April 11, alleging Orion and three named Individual Defendants fraudulently omitted disclosures from Orion's 2018 public filings. *See* Dkt. 1, ¶ 27. The Amended Complaint largely repeats the allegations in the Original Complaint of omitted disclosures and

adds the allegations of two confidential witnesses ("CW1" and "CW2"), claiming Orion failed to disclose that:

- Its goodwill was impaired;
- doubtful accounts required recording an allowance;
- it was not in compliance with its financial covenants;
- it did not expect to meet its future internal liquidity and working capital needs;
- estimates on construction projects and reserves on certain customer disputed accounts receivables were incorrect;
- the Company lacked internal controls for financial reporting ("ICFR"); and
- the Company detected unspecified instances of fraud.

*See* Am. Compl., ¶ ¶9, 28, 37.

The Amended Complaint is conclusory and fails to state a claim for a number of reasons. Its assertions, based on statements attributed to the confidential witnesses, have neither a substantive nor temporal connection to the fraud that has been alleged.  In fact, the new complaint clearly discloses that the alleged wrongful conduct supposedly reported by CW1 and CW2 to an outside auditor staff member, Company H.R. personnel, Company Internal Audit personnel, and other Company personnel occurred before the confidential witnesses' departures from the Company in March 2018 and involved alleged revenue recognition irregularities. Whatever questionable value these assertions might have in the abstract, they are entirely unrelated to the goodwill analysis undertaken by the company following the end of the 2018 third quarter, more than six months after their departures. To the contrary, the confidential witnesses' assertions are entirely silent with respect to any goodwill impairment, accounts receivable, future liquidity and working capital needs, construction project estimates, or ICFR. The Amended Complaint again relies on group pleading and does not identify with specificity how or why the alleged misrepresentations were false or misleading. It mischaracterizes alleged misrepresentations as omissions to try to obtain the Supreme Court's *Affiliated Ute* decision's presumption of the required element of reliance in securities cases involving omissions of material facts. Furthermore,

it does not allege facts to defeat the safe-harbor provisions the law provides to forward-looking statements in companies' public filings. But above all else, whether considered in isolation or together, the Amended Complaint's allegations do not raise the strong inference of scienter the law requires. Without scienter, the Amended Complaint fails to state a claim.

## II. BACKGROUND

Orion is headquartered in Houston, Texas, and does business in the United States, Canada, and the Caribbean Basin. Orion has two operating segments: heavy civil marine construction and commercial concrete. Am. Compl. ¶ 21.

On October 18, 2018, Orion announced that, when it announced earnings for the third quarter, it expected to report a revenue shortfall for the third quarter of 2018 due to reasons beyond its control: unexpected changes in customer schedules and "continuous rain throughout its market areas" in Texas that delayed work on concrete projects. Am. Compl. ¶¶ 3, 49; Orion 8K, A-177 (filed October 24, 2018).[1]

On November 2, 2018, Orion announced that, in response to potential indications of goodwill impairment for its marine and concrete construction units, it performed a qualitative assessment per GAAP. Am. Compl. ¶¶ 57–58; 2018 10-Q (Q3), A-201. That test did not indicate a probability of impairment, but on March 18 of this year, Orion announced the need for further impairment evaluations that delayed the filing of its annual report, and that it expected an operating

---

[1] *See* Dkt. 20, Exhibit A for a collection of S.E.C. filings referenced in this Motion with the designation "A-___" (exhibit paginated for ease of reference).  Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). A court may also consider "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). When deciding a motion to dismiss in securities actions, "a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the S.E.C., and (2) are actually filed with the S.E.C." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

and net loss for the financial year due to impairments, unfavorable changes in construction estimates, and disputed accounts receivables. Am. Compl. ¶ 60; Orion 12b-25, A-223.

On March 26, Orion reported a $94.4 million net loss for the fourth quarter of 2018, due to a $69.5 million goodwill impairment charge, continued heavy rains in key Texas markets, and other factors. Am. Compl. ¶ 62; Orion 8K, A-226. The following day Orion filed its annual 10-K report for 2018, in which independent auditor KPMG provided its opinion that Orion "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2018…" Am. Compl. ¶¶ 65–66; 2018 10-K, A-288 (KPMG provided the same opinion in Orion's 2017 10-K, A-48).

After Defendants moved to dismiss the Original Class Action Complaint filed April 11, 2019, Plaintiff filed his Amended Class Action Complaint on October 4, 2019, alleging violations of the Securities Exchange Act Section 10(b) (15 U.S.C. §78j (b)) and S.E.C. Rule 10b-5 (17 C.F.R. § 240.10b-5) against Orion and three individuals, Orion CEO Mark R. Stauffer, CFO Robert L. Tabb, and former CFO Christopher J. DeAlmeida (together, "the Individual Defendants"). The Amended Complaint also asserts control-person claims against Individual Defendants under the Securities Exchange Act Section 20(b) (15 U.S.C. § 78t (a)).

### III. LEGAL STANDARD

Orion accepts the Amended Complaint's allegations as true for the purpose of this Motion, but will dispute them if the case proceeds. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Nevertheless, the allegations of an initial pleading must cross "the line from conceivable to plausible." *Id*. at 680 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations must be more than "merely consistent" with elements of a claim—they must "plausibly suggest" the satisfaction of those elements. *Twombly*, 550 U.S. at 557. The standard rejects as

implausible allegations of "purposeful, invidious" conduct when there is an "obvious alternative explanation" for that conduct. *Iqbal*, 556 U.S. at 682 (citing *Twombly*, 550 U.S. at 567). Thus, inferences of intent and malice are not plausible in the face of "more likely explanations" for the conduct described. *Id.* at 681. Conclusory allegations "are not entitled to be assumed true." *Id.*

To state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must allege:

(1)    a material misrepresentation or omission by the defendant;
(2)    scienter;
(3)    a connection between the misrepresentation or omission of fact and the purchase or sale of a security;
(4)    justifiable reliance on the misrepresentation;
(5)    economic loss; and
(6)    loss causation.

*See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 286, n.1 (2014); *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015); *Plaisance v. Schiller*, 2019 U.S. Dist. LEXIS 42073, at *16–18 (S.D. Tex. Mar. 14, 2019) (Lake, J.).

The Private Securities Litigation Reform Act (the "PSLRA") requires a complaint asserting fraud claims under the Exchange Act to specify each allegedly misleading statement and the reason why it is misleading; even an allegation made on information and belief must still state with particularity all facts on which the belief is formed. The PSLRA's higher pleading standard, 15 U.S.C. § 78u-4(b)(1), incorporates the Rule 9(b) standard, requiring plaintiffs to specify the alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006). A district court must dismiss a securities-fraud claim that fails to satisfy either the PSLRA's pleading requirements or those of Rule 9(b). *Id.*

## IV. LAW AND ARGUMENT

### A.   THE ABSENCE OF REQUIRED PARTICULARS

To satisfy the PSLRA's pleading standards, the Amended Complaint must plead with particularity facts that show the Defendants made the alleged misrepresentations with scienter and must plead with specificity how or why those statements were false. The Amended Complaint fails to do this. Instead, Plaintiff resorts to conclusory assertions and improper group pleading to make his allegations. This does not meet the heightened pleading standards of the PSLRA.

### 1.   The Amended Complaint's Allegations do not Support Scienter.

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–194, n.12 (1976)). To satisfy this standard, Plaintiff must plead, at a minimum, that Defendants acted in a manner that was "an extreme departure from the standards of ordinary care, and that present[ed] a danger of misleading buyers or sellers which [was] either known to the defendant or is so obvious that the defendant must have been aware of it." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993) (internal citation omitted). To withstand a motion to dismiss, the inference of scienter "must ultimately be 'cogent and compelling,' not merely 'reasonable' or 'permissible.'" *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008) (citing *Tellabs* at 324).

Plaintiff fails to allege facts adequate to support an inference, let alone a strong inference, that the Individual Defendants had the requisite scienter to state a claim for fraud under Section 10(b) with respect to any of the alleged misrepresentations made during the purported class period. Without "specific facts giving rise to a strong inference of scienter," the Amended Complaint must be dismissed. *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 882 (S.D. Tex. 2004) (Lake, J.) (internal citation omitted).

a.    *The Confidential Witness Allegations do not Support Scienter.*

Since the Supreme Court's *Tellabs* decision in 2007, the Fifth Circuit has adopted the Seventh Circuit's treatment of confidential witnesses developed in *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007), which permits consideration of confidential witness allegations to support scienter, but at a "steep discount":

> It is possible to imagine situations in which statements by anonymous sources may corroborate or disambiguate evidence from disclosed sources. Informants sometimes play this role in applications for search warrants. Because it is impossible to anticipate all combinations of information that may be presented in the future, and because *Tellabs* instructs courts to evaluate the allegations in their entirety, we said above that allegations from "confidential witnesses" must be "discounted" rather than ignored. **Usually that discount will be steep.**

*Id*. at 757 (emphasis added).

A plaintiff relying on confidential witnesses to support a scienter claim must (1) provide sufficient details about their sources to credit their statements, and (2) tie those statements to the alleged fraud. *Ind. Elec. Workers' Pension Tr. Fund IBEW*, 537 F.3d at 537 (5th Cir. 2008). That case, citing *Higginbotham*, found that for identifying information "[a]t the very least, such sources must be described 'with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information pleaded.'" *Id.* at 535 (ellipses omitted) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002) and citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 552 (5th Cir. 2007) (confidential sources insufficient as bases for scienter when they lacked job descriptions, individual responsibilities, and specific employment dates **relevant to their accusations**)).

Here, Plaintiff's descriptions of the confidential witnesses undermine the Amended Complaint's allegations of scienter. For instance, both CW1 and CW2 worked at Orion for less than a year (eleven and five months, respectively) and both left the Company well before

Defendant Tabb's promotion to Chief Financial Officer and the events during the third quarter of 2018 that form the basis for this action. Am. Compl. ¶¶ 29, 34. Additionally, their positions at the Company bear little to no connection to the Amended Complaint's allegations: neither job description involves goodwill impairment analysis or accounting, accounts receivable and related allowances, construction project estimates, or ICFR. *Id*. Temporally and substantively, the confidential witnesses' tenures and positions do not relate to the Plaintiff's allegations.

And just as their respective tenures and positions do not relate to the Amended Complaint's allegations, the content of the confidential witnesses' allegations bears no observable connection to the misrepresentations and omissions that Plaintiff has alleged. The Amended Complaint makes no effort to tie their allegations of improper revenue recognition to goodwill accounting, accounts receivable and related allowances, construction project estimates, or ICFR. Nor does it tie their allegations to the Company's disclosures toward the end of the class period that purportedly "revealed" the alleged misrepresentations and omissions contained in previous Company filings. Those disclosures do not state an inability to meet the Company's debt covenants and do not disclose any past improper revenue recognition practices at the Company as the confidential witnesses allege. Am. Compl. ¶¶ 60–66. Instead, those disclosures stated a net loss of $94.4 million due to a non-cash goodwill impairment, customer-driven cost overruns on certain projects, and reserves on disputed accounts receivables. Am. Compl. ¶ 62, quoting Orion 8-K (filed Mar. 26, 2019). As in *Ind. Elec. Workers' Pension Tr. Fund IBEW*, Orion did not receive a qualified or going concern audit report, did not restate its prior financial reports, and "has never corrected, repudiated, or recalculated" its revenue recognition practices and, more generally:

> [T]he company never restated its earnings or financial reports
> based on the matters alleged by plaintiffs; has not received a

> qualified audit report; has not reported that it was the victim of
> any accounting irregularities; and has endured no liquidity crisis,
> as might have been expected if massive accounting fraud had
> occurred.

*Ind. Elec. Workers' Pension Tr. Fund IBEW,* 537 F.3d at 537, 532.[2]

In fact, the Amended Complaint contradicts the confidential witnesses' allegations of improper revenue recognition to inflate EBITDA to meet the Company's debt covenants. The confidential witnesses claim Orion's revenue recognition practices were improper because they recognized revenue on uncompleted work and recognized revenue "significantly more than the Company had actually received." Am. Compl. ¶¶30, 35. Orion's 2017 10-K (quoted at Am. Compl. ¶ 24), however, explicitly contemplates both practices as standard elements of the percentage-of-completion accounting method:

> Revenues from construction contracts are recognized on the
> percentage-of-completion method. The percentage-of-completion
> method measures the ratio of costs incurred and accrued to date for
> each contract to the estimated total costs for each contract at
> completion.… We consider unapproved change orders to be
> contract variations on which we have customer approval for scope
> change, but no agreement on price associated with that scope
> change. These costs are included in the estimated cost to complete
> the contracts and are expensed as incurred. **We recognize revenue
> equal to cost incurred on unapproved change orders when
> realization of price approval is probable** and the estimated
> amount is equal to or greater than our cost related to the unapproved
> change order and the related margin when the change order is
> formally approved by the customer.

---

[2] *See also, id.* at 535–536:

> Here, there was no mea culpa from the company in the form of
> acknowledged wrongdoing or restated financial reports, nor was there any
> auditor qualification to those aspects of the reports made the basis of this
> complaint, nor any publicly expressed reservations by the auditors to the
> financials. There is no single event or fact that the executives can be
> alleged to have known and concealed from the public.

2017 10-K, A-31–32 (emphasis added). In other words, costs incurred on a project drive revenue recognition under this accounting standard, not the amount of work completed or receipt of payment. Thus, the confidential witnesses' claims reflect their own misunderstanding of percentage-of-completion accounting rules and do not demonstrate scienter.

Additionally, Orion's 2017 10-K at A-47–49 contained accounting firm KPMG's attestations that Orion's financial statements conformed to GAAP and that the Company maintained effective ICFR. Notably, CW1 reported her claims of fraud to KPMG and CW2 stated KPMG investigated claims of improper revenue recognition. Am. Compl. ¶¶ 32, 36. The 2018 10-K, however, contained the same unqualified KPMG opinions as 2017, attesting that Orion maintained compliance with GAAP and effective ICFR. 2018 10-K, A-287-289.

The confidential witnesses do not offer "cogent and compelling" scienter allegations, not just due to the discounted value of confidential witness statements generally, but also because the Amended Complaint fails to tie CW1 and CW2's job responsibilities and allegations to Plaintiff's claimed misrepresentations and omissions. The addition of these confidential witness' allegations is the chief distinguishing feature between the Original and Amended Complaints, but they fail to provide the scienter allegations the law requires. *See also infra,* Sections IV(A)(1)(c) and IV(A)(3).

### b.     *Positions at Orion are Insufficient to Support Scienter.*

The Fifth Circuit makes plain: a "pleading of scienter may not rest on the inference that defendants must have been aware of the misrepresentation based on their positions within the company." *Abrams v. Baker Hughes Inc.,* 292 F.3d 424, 432 (5th Cir. 2002). Without specific allegations about what the Individual Defendants actually knew regarding "undisclosed adverse facts" about Orion's financial and operating condition, Am. Compl. ¶¶ 73–75, the pleading cannot support scienter. *Indiana Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 540 (5th Cir. 2008) (rejecting sufficiency of scienter allegation on basis officers "recei[ved]

monthly reports on the progress of contracts, which were discussed at meetings"); *Goldstein v. MCI World Com,* 340 F.3d 238, 251 (5th Cir. 2003) (rejecting scienter allegation on basis of officers' "close involvement in the day-to-day operation and management" of the company). Plaintiff must identify each Defendant's specific knowledge and plead how that knowledge contradicted what that Defendant told the public. He has not.

*c.   GAAP Violations do not Support Scienter.*

The alleged GAAP violations do not support scienter. Plaintiff does not identify the relevant accounting standards governing goodwill impairment or accounts receivable, explain how Orion failed to comply with those standards, or specify when Orion's executive officers knew that it had any impairments. "The mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter." *In re Dynegy*, 339 F. Supp. 2d at 883 (S.D. Tex. 2004) (Lake, J.); *see also Lovelace v. Software Spectrum Inc.*, 78 F. 3d 1015, 1020 (5th Cir. 1996) ("The party must know that it is publishing materially false information or the party must be severely reckless in publishing such information.") (internal quotation omitted); *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) ("[P]laintiffs' boilerplate averments that the accountants violated particular accounting standards are not, without more, sufficient to support inferences of fraud.").

Plaintiff alleges no facts showing that "earlier impairment charge[s] [were] so clearly required by accounting principles that the failure to take such . . . charge[s] was fraudulent." *In re Loral Space & Commc'ns Ltd. Sec. Litig.,* 2004 U.S. Dist. LEXIS 3059, at *51 (S.D.N.Y. Feb. 27, 2004). *See also In re Fannie Mae 2008 Sec. Litig.,* 742 F. Supp. 2d 382, 409 (S.D.N.Y. 2010) ("The fact that a financial item is accounted for differently, or in a later period, does not support an inference that a previously filed financial statement was fraudulent.").

Plaintiff's allegations suggest GAAP and ICFR are objective concepts involving straightforward applications of universal rules, but "goodwill estimates are opinion statements because they 'depend on management's determination of the "fair value" of the assets acquired and liabilities assumed, which are not matters of objective fact and will vary depending on the particular methodology and assumptions used.'" *Collier,* 2016 U.S. Dist. LEXIS 136929, at *35 (quoting *Fait v. Regions Fin. Corp.,* 655 F.3d 105, 110–11 (2d Cir. 2011)) (altered on other grounds as stated in *Gen. Partner Glenn Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016)). "[D]eterminations on such matters can differ reasonably and sizably…. Plaintiffs cannot transform inherently nuanced conclusions into fraudulent misstatements or omissions simply by saying that there were abuses or misuses of the GAAP rules." *Ind. Elec. Workers' Pension Tr. Fund IBEW*, 537 F.3d at 536 (5th Cir. 2008). Accordingly, Plaintiff must—but does not—allege facts showing the opinions regarding goodwill and other alleged misrepresentations were not sincerely held, contained untrue assertions of fact, or omitted material facts that conflict with what a reasonable investor would have understood. *See Omnicare, Inc. v. Laborers' Dist. Council Constr. Indus. Pension Fund,* 575 U.S. __, 135 S. Ct. 1318, 1326–29 (2015).

For GAAP violations to support a securities fraud claim, a complaint must connect the alleged GAAP violations with a corresponding fraudulent intent of individual defendants by, for example: identifying who in particular instructed the employees not to make the accounting adjustments; the particular adjustments not made; how omission of those adjustments was improper in terms of reasonable accounting practices; and whether those adjustments were material in light of the company's overall financial position. *See Shushany,* 992 F.2d at 522 (5th Cir. 1993). Plaintiff pleads no similar allegations and makes no attempt to connect the

alleged GAAP violations with a corresponding fraudulent intent of any Individual Defendants. His allegations directly name only Mr. DeAlmeida, but CW1's claims against him fall short.

For instance, CW1 "stated that CFO DeAlmeida was involved in the falsification of the Company's accrual spreadsheet and the month-end workbook," Am. Compl. ¶ 31, but Plaintiff offers none of the required details for the basis of CW1's accusation. Further, the Amended Complaint does not tie these allegations to any misrepresentation that forms the basis for its claims, and therefore does not relate the allegations to its theory of loss causation (the subsequent disclosures that caused a decline in stock price). Instead, the confidential witness claims pertain to recognizing revenue on incomplete projects, and not to goodwill, ICFR, construction project estimates, or accounts receivable. *See infra,* Section IV (A)(5).

As demonstrated above, recognizing revenue on partially completed projects is a standard practice under the percentage-of-completion accounting method, which method Orion previously disclosed and explained in its public filings. CW1's vague allegations reflect a misunderstanding of GAAP and do not support a strong inference of scienter.

Plaintiff alleges that Orion and its officers knowingly published misrepresentations regarding the Company's financial position, but pleads no "cogent and compelling" facts showing that *any* of the Individual Defendants knew their GAAP statements were false or misleading at the time Orion published the results. *See In re Paracelsus Corp. Sec. Litig.,* 61 F. Supp. 2d 591, 599 (S.D. Tex. 1998); *Stockman v. Flotek Indus.,* 2010 U.S. Dist. LEXIS 103196, at *82–83 (S.D. Tex. Sep. 29, 2010) (Lake, J.) ("Nor do plaintiffs allege any facts showing that any of [the company's] financial projections were false or in violation of GAAP, or that [defendants] knew that [the company's] financial projections were false or in violation

of GAAP." (citing *Abrams,* 292 F.3d at 432) (5th Cir. 2002)). Accordingly, the GAAP allegations do not create a strong inference of scienter.

**d.**     *Universal Profit Motives do not Support Scienter.*

Plaintiff does not plead that Individual Defendants had a motive to commit fraud beyond the universal motives possessed by all executives, which are legally insufficient to support scienter. The Fifth Circuit has held that scienter in a particular case "may not be footed solely on motives universal to corporate executives" like the desire to maintain high stock prices to increase executive compensation or maintain credit ratings. *Indiana Elec. Workers' Pension Trust Fund IBEW*, 537 F.3d at 544 (5th Cir. 2008) (citing *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).

In fact, Orion's public filings contradict CW1's allegation at Am. Compl. ¶ 31 that "the Company" falsified records so executives could receive their bonuses: no named executive officers received bonuses in 2017 (for the third consecutive year) despite being eligible, and only Mr. Tabb received a bonus in 2018.[3] The Amended Complaint does not establish fraudulent intent to support scienter; instead, its inconsistencies demonstrate the unreliability of its accusations.

**e.**     *Signing Financial Statements does not Support Scienter.*

The Individual Defendants' attestations of regulatory filings and certifications for Orion are likewise insufficient to allege scienter. A defendant's signature on a SOX certification, without more, does not support a strong inference of scienter. *Mun. Employees' Ret. Sys. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 434 (5th Cir. 2019). Rather, a defendant's certification of financial statements can only support a strong inference of scienter if "the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material

---

[3] See Exhibit B attached to this motion, Orion's 2017 and 2018 Definitive Proxies, at B-34, B-86.

misrepresentations or omissions." *Cent. Laborers' Pension Fund,* 497 F. 3d at 555 (5th Cir. 2007) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)). Plaintiff alleges no glaring accounting irregularities or red flags to support a strong inference that the Individual Defendants knew, in signing the certifications, that Orion's financial statements contained material misrepresentations or omissions.

As detailed above, Plaintiff has failed to allege scienter, and on that basis alone the Court should dismiss the Amended Complaint.

### 2. The Amended Complaint Does Not Specify How the Statements are False.

Even if the Plaintiff had alleged sufficient facts to show scienter, which he has not, he has failed to identify ***how*** and ***why*** each of the quoted statements from Orion public filings are false or misleading. This failure also requires dismissal of the Amended Complaint.

Plaintiff's litany of quotations, with no explanation of their significance, does not tell the Court how all these statements were false when made. Courts in this Circuit and elsewhere repeatedly reject these sorts of allegations as violating the PSLRA. *See, e.g., In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 857–58 (N.D. Tex. 2005) ("Plaintiffs have left it to the Court to guess which statements are false and misleading and why each statement is false and misleading…. The Court will not waste its resources attempting to construe which statements are actionable and why each is actionable."); *In re Entrust Sec. Litig.*, 2002 U.S. Dist. LEXIS 26669, at *11–12 (E.D. Tex. Sept. 30, 2002).[4]

---

[4] *See also, e.g., McCasland v. FormFactor, Inc.,* 2008 U.S. Dist. LEXIS 60544, at *22 (N.D. Cal. July 25, 2008) ("[T]he complaint here contravenes applicable pleading standards by juxtaposing the same series of generic conclusions against each set of block quotes, without differentiation or specificity."); *Tabor v. Bodisen Biotech, Inc.,* 579 F. Supp. 2d 438, 452–53 (S.D.N.Y. 2008) ("Plaintiffs have not alleged exactly which statements . . . were false . . . Plaintiffs' use of large block quotes from filings and press releases, followed by generalized explanations of how the statements were false or misleading, are not sufficient to satisfy the heightened pleading requirements.").

Plaintiff must—but fails to—allege "why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Allegations that constitute "nothing more than disagreement with [the company's] accounting judgments" regarding goodwill impairment "cannot support a fraud claim." *Collier*, 2016 U.S. Dist. LEXIS 136929, at *38. Indeed, GAAP permits management to choose among a range of reasonable accounting treatments. *Thor Power Tool Co. v. Comm'r of Internal Revenue,* 439 U.S. 522, 544 (1979), and *supra* Section IV(A)(1)(c). The Amended Complaint fails to provide any particulars to demonstrate *why* Orion's treatments of receivables, doubtful accounts, construction project estimates, goodwill, and ICFR were fraudulent.

### 3. The Amended Complaint Improperly Relies on "Group Pleading."

Plaintiff does not identify the specific Defendant(s) responsible for making or issuing each of the alleged misrepresentations attributed to "Defendants," and provides no well-pleaded allegations regarding an inference of scienter as to any of them. Instead, the Amended Complaint relies on group pleading, which this Court rejects as at odds with the PSLRA. *Collmer v. United States Liquids, Inc.*, 268 F. Supp. 2d 718, 755 (S.D. Tex. 2001); *see also Owens*, 789 F.3d at 537–38 (5th Cir. 2015). Where, as here, no allegations connect a specific defendant to any of the statements allegedly made by "Defendants," the group pleading allegations fail. *See Southland,* 365 F.3d at 365 (5th Cir. 2004) (rejecting the group pleading doctrine); *see also Stephens v. Uranium Energy Corp.*, 2016 U.S. Dist. LEXIS 91897, at *42 (S.D. Tex., July 15, 2016).

The Amended Complaint camouflages group pleading within its confidential witness allegations that name individuals, meeting dates, and specific projects without providing details for the fraud-related claims. For instance, CW1's account generally invokes Vice President of Accounting Kristy Norris, but resorts to group pleading in its claims of purported fraud with compound subjects like "Norris **and Orion**" and abrupt shifts to the passive voice: "CW1 stated

that an accrual spreadsheet and the month-end workbook **were falsified** to support false journal entries to the general ledger"; "According to CW1, Assistant Controller Ashley Claypole used the spreadsheet to make general ledger entries, and the adjustments **were made** to book accruals to increase the Company's [EBITDA]." Am. Compl. ¶¶ 30–31 (emphasis added). Similarly, Plaintiff relates CW1 participated in a meeting with Mr. DeAlmeida in December 2017 involving a dredging project where "CFO DeAlmeida and Orion" were attempting to make an adjustment to recognize revenue on the partially completed project "despite the fact that CW1 never received the necessary paperwork to support the claim that the project had been completed." Am. Compl. ¶ 33. Despite twice invoking Mr. DeAlmeida's name in this *non sequitur* to CW1's primary claims, CW1's account concludes, "Orion made the adjustments," without identifying the individual who ultimately made or directed them. Plaintiff's recitation of CW2's allegations fails to name any Individual Defendants. Am. Compl. ¶¶ 35–36.

Plaintiff "must allege facts sufficient to raise a strong inference of scienter with respect to **each individual defendant**." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (emphasis added). Group allegations that "the defendants" or "the company" knew something do not meet that standard. *Southland*, 365 F.3d at 366 (5th Cir. 2004). Plaintiff must allege specific facts supporting a strong inference that each Individual Defendant either knew that they were publishing materially false information at the time of publication or were severely reckless in publishing that information. *Abrams,* 292 F.3d at 432 (5th Cir. 2002).

Courts in this Circuit have consistently held that a securities fraud complaint without particularized allegations that a defendant received specific information saying one thing, but told the investors something different, does not satisfy the PSLRA. Plaintiff must identify

*specific communications* provided to specific people at specific times that contradict their public statements. *Stockman,* 2010 U.S. Dist. LEXIS 103196, at *27–28 (S.D. Tex. 2010) (Lake, J.).

Courts regularly dismiss cases lacking these details, even where they involve large multi-year restatements of a company's financial results and even in situations where the company's executives certified the accuracy of that financial information. *See, e.g., Collmer,* 268 F. Supp. 2d at 755 (S.D. Tex. 2001). This Court should do the same.[5]

### 4.     The Timeline Reinforces the Need for Specificity.

The events described in the second October 24, 2018 8-K (the September 2018 rains and other delays creating the revenue shortfall) occurred almost six months after dissemination of the allegedly misleading 2017 10-K, and before Mr. Tabb's elevation to CFO. How could Orion have anticipated the rains and other delays, and how could Mr. Tabb be responsible for the alleged falsehoods in the 2017 10-K or the first and second quarter 10-Qs? Similarly, how could Mr. DeAlmeida be responsible for disclosures made after his departure? How can the confidential witness allegations relate to events months after their departures? The Amended Complaint does not say.

---

[5] Plaintiff's reliance on the phrase "and/or" that appears 54 times in the body of the Amended Complaint further points to its insufficiency. Courts and academics both decry this artificial conjunction as opaque, a "freakish fad," an "accuracy-destroying symbol," and a "linguistic abomination." Garner, Bryan A. *Garner on Language and Writing: Selected Essays and Speeches of Bryan A. Garner*, American Bar Association (2009) (pp. 180–181). *See also American Gen. Ins. Co. v. Webster,* 118 SW 2d 1082, 1084 (Tex. Civ. App. Fort Worth 1938) ("the abominable invention and/or is as devoid of meaning as it is incapable of classification by the rules of grammar and syntax"). As David Mellinkoff observed in *The Language of the Law* 308–09 (1963):

> Ultimately the decision must be made, which is it — A or B or both? And this decision is not helped by *and/or.* That formula permits the one person who should know what he is talking about to dodge the decision, and fobs off the choice on a stranger — a lawyer, a judge — who may not have the slightest notion what the writer really meant.

The description of the goodwill impairment testing process described in the 2017 10-K and the November 2, 2018 10-Q rests part on an analysis of prior financial results—among them discounted cash flow valuations and market capitalizations. 2017 10-K, A-32; 2018 10-Q (Q3), A-194–195. The factors that affected the analysis happened in the third quarter of 2018—well after publication of the alleged falsehoods in the 2017 10-K and first and second quarter 2018 10-Qs. The securities laws do not require clairvoyance. Plaintiff must explain how and why the October 2018 8-Ks contain false statements, as opposed to management's timely and accurate warnings to the market of the actualization of some of the very risks disclosed in the quote from the 2017 10-K in Paragraph 25 of the Amended Complaint and the increased risk of goodwill impairment. He does not.

The Amended Complaint must also address how and why the discussion of goodwill impairment in the third quarter 2018 10-Q was false at the time made. It must identify the individuals responsible and describe the basis for their responsibility. Even more importantly, it must specify what the responsible individuals knew at the time and how their conduct amounts to scienter. The Amended Complaint falls far short in this regard.

### 5.    The Amended Complaint Does Not Plead Loss Causation.

Loss causation refers to a "direct link between the misstatement and a plaintiff's loss, and generally requires a corrective disclosure relating to the challenged representations, followed by a decline in the stock's price." *Fitzpatrick v. Uni-Pixel, Inc.*, 35 F. Supp. 3d 813, 833 (S.D. Tex. 2014) (Lake, J.). To plead loss causation, the disclosed information must reflect part of the "relevant truth" obscured by the allegedly fraudulent statements. *Id*. at 834.

Here, the Amended Complaint does not identify the Defendants' representations it challenges with any particularity, much less establish a direct link between them and the disclosures in Orion's third quarter 2018 10-Q and 2018 10-K. The Amended Complaint does not

identify how the confidential witness allegations relate to those disclosures, nor does it address why, after purportedly learning of and investigating those allegations, KPMG still supplied its unqualified opinions that Orion's financial statements conformed to GAAP and that the Company maintained effective ICFR. No subsequent disclosures repudiate Orion's revenue recognition practices on partially completed projects. No disclosures identify previous Company statements as incorrect when made. By not alleging these types of direct links, Plaintiff fails to state a claim.

In fact, the Company's October and November 2018 statements the Amended Complaint attacks (Am. Compl. ¶¶ 49, 51, 54–55, and 57–57) are not actionable at all because Paragraph 53 reveals those statements caused a drop in Orion's stock price: "allegedly false and misleading statements that did not favorably effect [*sic*] share price are not actionable under a fraud-on-the-market theory." *Fitzpatrick* at 831 (citing *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 418 (5th Cir. 2001)).[6] Accordingly, the Court should dismiss the Amended Complaint on these grounds as well.

### B.    MISREPRESENTATIONS MISCHARACTERIZED AS OMISSIONS

To avail himself of the presumption of reliance in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), in the event the *Basic v. Levinson*, 485 U.S. 224 (1988) fraud-on-the-market presumption of reliance is unavailable, Plaintiff mischaracterizes the alleged misrepresentations of material fact as omissions.[7] *See* Am. Compl. at ¶ 28.

This Court has rejected other plaintiffs' attempts to recast misrepresentations as omissions to obtain the benefit of *Affiliated Ute's* presumption of reliance. *Young v. Nationwide Life Ins. Co.*,

---

[6] Similarly, the analyst reports the Amended Complaint quotes are not actionable statements because Plaintiff does not allege Defendants exercised control over any of the statements, adopted them, or used the analysts as conduits to the market. "Absent such allegations, defendants cannot be held liable for statements made in a report published by an outside analyst." *Id*. at 824.

[7] *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) (presumption of reliance available in misrepresentation cases, but only when there exists an efficient market for the securities).

183 F.R.D. 502 (S.D. Tex. 1998) (plaintiffs sought class certification claiming defendants' misrepresentations of private funds marketed as clones of public retail mutual funds omitted truth of their independent status).  This Court rejected this argument as fallacy:

> Plaintiffs attempt to fall within the "omission case" category by arguing that the crux of their complaint is not Defendants' misrepresentations but rather Defendants' omission of statements which would clarify any confusion between the funds. This argument cannot prevail, however, because **such a circular argument would result in every case of misrepresentation becoming a case of omission** as a result of the defendant's failure to correct a misrepresentation.

*Id.* at 510 (emphasis added). Here, in in Paragraph 37 (1)–(3) of the Amended Complaint, Plaintiff presents the same circular logic seeking *Affiliated Ute's* presumption of reliance: Defendants misstated goodwill, accounts receivable, and ICFR, and omitted facts to correct those purported misrepresentations—therefore the misrepresentations were in fact omissions. As in *Young*, this argument fails and dooms Plaintiff's reliance allegations.

The Amended Complaint makes these mischaracterizations on multiple occasions. Paragraphs 22–27 of the Amended Complaint quote extensively from Orion's 2017 10-K, filed March 18, 2018, and Paragraph 28 asserts that filing was materially false. That 10-K discussed Orion's ICFR at A-37–38, stating in part: "…management concluded that our internal control over financial reporting was effective as of December 31, 2017." This is an affirmative representation which, if false (and it is not), cannot be dressed up as an omission.

Paragraphs 22, 39, and 45 quote from the 2017 10-K and first and second quarter 2018 10-Qs, respectively, asserting that Orion's goodwill was not impaired as of the dates of those reports. The 2017 10-K at A-48–49 also contains the reports of Orion's independent auditors, which assert Orion "…maintained in all material respects, effective internal control over financial reporting as of December 31, 2017…." That statement and the quotes from the two 10-Q's are affirmative

representations that Plaintiff cannot transform into omissions by recharacterizing them as failures to disclose overstatements of goodwill.

Paragraph 23 quotes from the 2017 10-K discussion of Orion's process to determine its need for an allowance for doubtful receivables and its lack of any such allowance as of December 31, 2017. Paragraph 28, then, improperly transforms this affirmative representation into an omission to disclose overstatement of accounts receivable.

Paragraph 37 improperly alleges that the supposed materially false representations of the effectiveness of Orion's ICFR and misstatements of goodwill and accounts receivable become omissions to disclose their material effect on Orion's financial results. That, too, is intellectual legerdemain: a material overstatement of goodwill or accounts receivable necessarily materially affects one's financial results—it adds nothing to Plaintiff's claims to assert that a material overstatement is a material omission of its effect on Orion's financial condition.

The final alleged falsehood—a failure to disclose that the previous falsehoods made Defendants' statements about Orion's business, operations, and prospects materially misleading— again stands affirmative representations on their head by asserting that Defendants, in effect, omitted to tell the public that they were lying. Am. Compl. ¶ 37.

### C.      PSLRA's Safe Harbor Provisions Applied to Quoted Statements

The PSLRA creates a safe harbor for forward-looking statements "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." *See Stockman*, 2010 U.S. Dist. LEXIS 103196, at *68–69 (S.D. Tex. 2010) (Lake, J.); *In re Odyssey Healthcare, Inc. Sec. Litig.,* 424 F. Supp. 2d 880, 887 (N.D. Tex. 2005) (courts may assess adequacy of cautionary statements in motions to dismiss). Projections of future performance not worded as guarantees "are generally not actionable under the federal securities laws as a matter of law" due to the PSLRA's safe-harbor

provisions. *ABC Arbitrage*, 291 F.3d at 359 (5th Cir. 2002) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993)). If safe harbor protects a statement, to defeat these protections plaintiff "must plead facts demonstrating that the statement was made with actual knowledge of its falsity." *Plaisance* at 25–26 (S.D. Tex. 2019) (Lake, J.) (internal quotation omitted).

To qualify as meaningful cautionary language, the language must identify important factors that could cause actual results to differ materially from those in the forward-looking statement; however, where a statement is "mixed," *i.e.*, contains both forward-looking and non-forward-looking elements, and where a plaintiff alleges the entire statement is misleading because it omitted material information, courts determine whether the statement as a whole, not a particular part, is misleading. *In re Blockbuster Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 7173, at *14 (N.D. Tex. Apr. 26, 2004) (quoting *Harris v. IVAX Corp.*, 182 F.3d 799, 807 (11th Cir. 1999); *see also Kurtzman v. Compaq Comput. Corp.*, 2000 U.S. Dist. LEXIS 22476 at *48–49 (S.D. Tex. Dec. 12, 2000). Accordingly, the Amended Complaint's quoted portions of Orion's S.E.C. filings are treated as forward-looking and examined as a whole to determine whether safe harbor applies.

The Amended Complaint at Paragraphs 28, 42, and 48 states Orion issued materially false "and/or" misleading statements in its 2017 10-K and its 10-Qs covering the first two quarters of 2018, because Orion failed to disclose: that it overstated goodwill and accounts receivable in "certain" undisclosed periods; that it was not in compliance with all financial covenants and not expected to meet future liquidity and working capital needs; that its construction project estimates were unreasonable; and that it lacked effective ICFR.

The portions of the 2017 10-K quoted in the Amended Complaint disclosed a long list of risks with the potential for a "material adverse effect on our business, operating results, and financial condition," Am. Compl. ¶ 25, and further disclosed Orion detected no indications of

goodwill impairment and recorded no allowances for doubtful accounts receivable. Am. Compl. ¶¶ 22–23. The 10-Q portions the Complaint quotes in Paragraphs 39 and 45 likewise announced Orion identified no indications of goodwill impairment during those quarters. All three contained general and specific cautionary statements that satisfy PSLRA's safe-harbor requirements.

The 2017 10-K and the 2018 10-Qs for the first and second quarter contained general cautionary statements regarding forward-looking statements. 2017 10-K, A-3; 2018 10-Q (Q1), A-114; 2018 10-Q (Q2), A-154. They contained specific cautionary statements regarding goodwill. 2017 10-K, A-61; 2018 10-Q (Q1), A-98; 2018 10-Q (Q2), A-138. They contained specific cautionary statements regarding risk and uncertainty for accounts receivable. 2017 10-K, A-60; 2018 10-Q (Q1), A-97; 2018 10-Q (Q2), A-136. Finally, they contained specific cautionary statements regarding ICFR. 2017 10-K, A-38; 2018 10-Q (Q1), A-93; 2018 10-Q (Q2), A-132.

The 10-Qs incorporated by reference the ICFR risk disclosures in Orion's 2017 10-K, as permitted. See In re Tetra Techs., Inc. Sec. Litig., 2009 U.S. Dist. LEXIS 126687, at *41, n.8 (S.D. Tex. July 9, 2009). Additionally, Orion's 2017 10-K at A-48 contained accounting firm KPMG's opinion that Orion maintained effective ICFR. And, although CW1 reported her claims of fraud to KPMG and CW2 stated KPMG investigated the claims of improper revenue recognition, Am. Compl. ¶¶ 32, 36, the 2018 10-K contained the same unqualified KPMG opinion as 2017, attesting that Orion maintained effective ICFR. 2018 10-K, A-288.

The October 24 filing announcing preliminary results for the third quarter contained general and specific cautionary statements that satisfy PSLRA's safe-harbor requirements. Generally, the press release cautioned investors that "statements regarding future operations or results, including those set forth in this press release… are forward-looking statements." Orion 8K (filed October 24, 2018), A-179. Specifically, the release incorporated by reference Orion's 2017

10-K risk disclosures and warned investors Orion experienced unanticipated construction delays due to customer schedules and continuous September 2018 rains throughout its Texas market areas "which will cause third quarter 2018 results to fall significantly below its expectations," and further cautioned the results "are preliminary and therefore subject to the completion of customary quarterly closing and review procedures, including potentially performing an interim Goodwill test." *Id.* at A-177–179; Am. Compl. ¶ 49; *see also Stockman,* 2010 U.S. Dist. LEXIS 103196, at *71 (S.D. Tex. 2010) (Lake, J.) ("The May statements were accompanied by specific cautionary disclosures that weather adversely affected activity levels.").

Orion's third quarter 2018 10-Q also contained general cautionary statements regarding forward-looking statements, A-210, as well as the same specific cautionary statements concerning goodwill valuations, and the incorporation by reference of the 2017 10-K risk disclosures regarding accounts receivable and ICFR. Orion 2018 10-Q (Q3), A-194–195, "Goodwill and Other Intangible Assets"; A-219, "Risk Factors."

The statements quoted in the Amended Complaint were forward-looking and accompanied by general statements of caution and by specific cautionary disclosures. Accordingly, safe harbor protection applies, which Plaintiff can only defeat by adequately pleading scienter. *See In re Odyssey Healthcare,* 424 F. Supp. 2d at 889 (N.D. Tex. 2005). Demonstrated above, he has not.[8]

## VI. CONCLUSION

For the foregoing reasons, the Amended Complaint fails to state a claim and should be dismissed with prejudice.

---

[8] Because the Amended Complaint fails to allege a primary violation of Section 10(b), the claim for control-person liability under Section 20(a) necessarily fails. *See Southland*, 365 F.3d at 383–384 (5th Cir. 2004).

Respectfully submitted,

*/s/ Robert B. Bieck, Jr*

ROBERT B. BIECK, JR.
TX Bar No. 02300600
SDTX No. 13148
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8202
Fax: (504) 589-8202
Email: rbieck@joneswalker.com

ALEXANDER N. BRECKINRIDGE V
SDTX No. 3408032
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8138
Fax: (504) 589-8583
Email: abreckinridge@joneswalker.com

THOMAS E. SLATTERY
LA Bar No. 36944 (*Admitted Pro Hac Vice*)
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8724
Fax: (504) 589-8724
Email: tslattery@joneswalker.com

JAMES ARDOIN
TX Bar No. 24045420
SDTX No. 571281
JONES WALKER, LLP
811 Main Street, Suite 2900
Houston, TX 77002
Phone: (713) 437-1811
Fax: (713) 437-1946
Email: jardoin@joneswalker.com

**ATTORNEYS FOR DEFENDANTS
ORION GROUP HOLDINGS, INC., MARK R.
STAUFFER, CHRISTOPHER J. DEALMEIDA,
AND ROBERT L. TABB**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of the above and foregoing filed via the CM/ECF system, which caused service upon all parties on November 4, 2019.

*/s/ Robert B. Bieck, Jr.*
ROBERT B. BIECK, JR.