## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JOHN HECK, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>   v.<br><br>ORION GROUP HOLDINGS, INC., MARK R. STAUFFER, CHRISTOPHER J. DEALMEIDA, and ROBERT L. TABB,<br><br>                  Defendants. | Case No. 4:19-cv-01337<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** |

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDING.............................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED.......................................................... 1

III.    SUMMARY OF THE ARGUMENT ................................................................................. 2

IV.     STATEMENT OF FACTS ................................................................................................ 2

V.      STANDARD OF REVIEW .............................................................................................. 5

VI.     PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT.. 6

        A.      Plaintiff Adequately Alleges Falsity .......................................................... 6

                1.      Plaintiff Adequately Alleges That Defendants Made False and Misleading
                        Statements Regarding Orion's Goodwill, Doubtful Accounts, Estimates on
                        Construction Projects and Customer Disputed Accounts Receivable ........ 6

                2.      Defendants' SOX Certifications Are Actionable as Materially False and
                        Misleading Statements ............................................................................... 10

                3.      The PSLRA's Safe Harbor Provision Does Not Protect Defendants' False
                        and Misleading Statements ....................................................................... 11

        B.      Plaintiff Adequately Alleges Scienter ................................................................... 15

                1.      Defendants' Admissions Confirm that Defendants Were Aware that Their
                        Statements During the Class Period Were False and Misleading............. 16

                2.      The CW Accounts Bolster the Strong Inference of Scienter Alleged ...... 17

                3.      The Announcement of CFO DeAlmeida's Resignation on the Same Day as
                        the Company's Announcement of a Significant Revenue Shortfall Adds to
                        the Strong Inference of Scienter Alleged.................................................. 18

                4.      Defendants' SOX Certifications Add to the Strong Inference of Scienter
                        Alleged....................................................................................................... 19

                5.      Defendants' Desire to Comply with Orion's Debt Covenants Supports a
                        Strong Inference of Scienter ..................................................................... 20

    C.      Plaintiff Adequately Alleges Loss Causation............................................................ 20

    D.      Plaintiff Adequately Alleges Control Person Liability ........................................... 24

VII.    CONCLUSION.......................................................................................................... 24

# TABLE OF AUTHORITIES

CASES

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) .................................................................................... 17

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)................................................................................................... 15

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) .................................................................................... 23

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002)................................................................................... 16, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................... 5

*Asher v. Baxter Int'l Inc.*,
    377 F.3d 727 (7th Cir. 2004) .................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................... 5

*Bielousov v. GoPro, Inc.*,
    No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017)................................ 18, 19

*Brumbaugh v. Wave Sys. Corp.*,
    416 F. Supp. 2d 239 (D. Mass. 2006) ....................................................................... 13

*Chu v. Sabratek Corp.*,
    100 F. Supp. 2d 815 (N.D. Ill. 2000) .......................................................................... 9

*Cutler v. Kirchner*,
    No. 15-56897, 2017 WL 3530893 (9th Cir. Aug. 17, 2017) ...................................... 12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................... 2, 21, 22, 24

*EP Medsystems, Inc. v. EchoCath, Inc.*,
    235 F.3d 865 (3d Cir. 2000)...................................................................................... 15

*Hall v. Rent-A-Ctr., Inc.*,
    No. 4:16CV978, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) ............................... 18

*Hall v. Rent-A-Ctr., Inc.*,
   No. 4:16CV978, 2017 WL 6398742 (E.D. Tex. Oct. 19, 2017)................................................ 18

*Ho v. Duoyuan Global Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012)................................................................................ 19

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) .......................................................................................... 20

*Huddleston v. Herman & MacLean*,
   640 F.2d 534 (5th Cir. 1981) ............................................................................................ 14

*In re ArthroCare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010).............................................................................. 19

*In re Avon Sec. Litig.*,
   No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) .............................. 19

*In re Blockbuster Inc. Sec. Litig.*,
   No. 3:03-CV-0398-M, 2004 WL 884308 (N.D. Tex. Apr. 26, 2004) ...................................... 11

*In re BP p.l.c. Sec. Litig.*,
   No. 4:10-md-2185, 2012 WL 432611 (S.D. Tex. Feb. 13, 2012)............................................ 16

*In re Flowers Foods, Inc. Sec. Litig.*,
   No. 7:16-CV-222 (WLS), 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018).............................. 18

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) .............................................................................. 23

*In re OCA, Inc. Sec. and Derivative Litig.*,
   No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006) ........................................ 10, 11, 19

*In re Read-Rite Corp. Sec. Litig.*,
   335 F.3d 843 (9th Cir. 2003) ............................................................................................ 16

*In re St. Jude Medical, Inc. Sec. Litig.*,
   Civil No. 10-0851 (SRN/TNL), 2011 WL 6755008 (D. Minn. Dec. 23, 2011) ...................... 23

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal. 2009) ................................................................................ 18

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)....................................................................................... 11, 12, 13

iv

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ................................................................................ 15, 20

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)........................................................................................ 12

*Kaltman v. Key Energy Services, Inc.*,
447 F. Supp. 2d 648 (W.D. Tex. 2006)........................................................................ 18

*Kurtzman v. Compaq Computer Corp.*,
No. CIV.A.H-99-1011, 2000 WL 34292632 (S.D. Tex. Dec. 12, 2000).................................. 11

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ............................................................................... *passim*

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ...................................................................................... 12

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
927 F. Supp. 1297 (C.D. Cal. 1996) ............................................................................. 23

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)...................................................................................................... 15

*MicroCapital Fund LP v. Conn's Inc.*,
No. 4:18-CV-1020, 2019 WL 3451153 (S.D. Tex. July 24, 2019) .................................. 17, 18

*Middlesex Retirement Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ........................................................................ 10

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ...................................................................................... 24

*New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
537 F.3d 35 (1st Cir. 2008)......................................................................................... 12

*P. Stolz Family P'ship L.P. v. Daum*,
355 F.3d 92 (2d Cir. 2004).................................................................................... 13, 14

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) ...................................................................................... 12

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ...................................................................................... 20

v

*Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ................................................................................. 23, 24

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ................................................................. 20, 21

*Rougier v. Applied Optoelectronics, Inc*,
  No. 4:17-CV-2399, 2019 WL 6111516 (S.D. Tex. Mar. 27, 2019) ................................. *passim*

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010)........................................................................................ 11

*Spitzberg v. Houston Am. Energy Corp.*,
  758 F.3d 676 (5th Cir. 2014) ....................................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................... 1, 5, 15

*Wieland v. Stone Energy Corp.*,
  Civil Action No. 05-2088, 2007 WL 2903178 (W.D. La. Aug. 17, 2007)......................... 10, 19

*Yanek v. Staar Surigcal Co.*,
  388 F. Supp. 2d 1110 (C.D. Cal. 2005) ...................................................................... 13

## STATUTES

15 U.S.C. §78u-4(b)(1)(B)........................................................................................... 1

15 U.S.C. §78u-4(b)(2) .............................................................................................. 15

15 U.S.C. §78u-4(b)(4) .............................................................................................. 20

15 U.S.C. §78u-5(c)(1)(A)........................................................................................... 11

## I.      NATURE AND STAGE OF THE PROCEEDING

Plaintiff John Heck ("Plaintiff") has filed this securities class action against Defendants Orion Group Holdings, Inc. ("Orion" or the "Company"), Chief Executive Officer ("CEO") Mark R. Stauffer ("Stauffer"), Chief Financial Officer ("CFO") Robert L. Tabb ("Tabb"), and former CFO Christopher J. DeAlmeida ("DeAlmeida") ("Defendants").[1]   Within Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"), Plaintiff alleges that between March 13, 2018 and March 26, 2019, inclusive ("Class Period"), Defendants made false and misleading statements that, among other things: (1) Orion's goodwill was not impaired; (2) there existed no doubtful accounts that required the recording of an allowance; (3) the Company was in compliance with all financial covenants and expected to meet its future internal liquidity and working capital needs; (4) its estimates on construction projects and reserves on certain customer disputed accounts receivables were reasonable; and (5) Orion disclosed any material changes to the Company's internal control over financial reporting. The proceeding is at the pleading stage.

## II.     STATEMENT OF THE ISSUES TO BE DECIDED

Based upon Defendants' Motion to Dismiss Amended Complaint or in the Alternative, Motion for More Definite Statement ("Motion"), there are three primary issues to be decided: (1) whether Plaintiff has adequately alleged falsity under the Securities Exchange Act of 1934 ("Exchange Act") and the Private Securities Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4(b)(1)(B)); (2) whether Plaintiff has adequately alleged scienter under the Exchange Act and the PSLRA (*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 324-26 (2007)); and (3) whether Plaintiff has adequately alleged loss causation under the Exchange Act and the PSLRA

---

[1]      Defendants Stauffer, Tabb, and DeAlmeida are the "Individual Defendants."

1

(*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 256, 262-263 (5th Cir. 2009)).

## III. SUMMARY OF THE ARGUMENT

Plaintiff has adequately alleged falsity. Plaintiff has alleged with particularity that Defendants made false and misleading statements regarding, among other things, the Company's goodwill, doubtful accounts, estimates on construction projects and customer disputed accounts receivable. Defendants' admissions – as well as the accounts of former Orion employees – demonstrate that Defendants' statements were false and misleading. Plaintiff has also adequately alleged scienter based upon, among other things: (1) Defendants' admissions; (2) the accounts of former Orion employees; (3) CFO DeAlmeida's suspicious "resignation;" (4) Defendants' certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"); and (5) Defendants' desire to comply with Orion's debt covenants. Finally, Plaintiff has adequately alleged loss causation by providing Defendants with an indication of the loss and the causal connection that Plaintiff has in mind. Accordingly, the Court should deny Defendants' Motion.

## IV. STATEMENT OF FACTS

Orion is purportedly a specialty-construction company that operates in the United States, Canada, and the Caribbean Basin. ¶¶2, 21.[2] The Company's marine segment services include marine transportation facility construction, marine pipeline construction, marine environmental structures, dredging of waterways, channels and ports, environmental dredging, design, and specialty services. *Id*. Orion's concrete segment provides turnkey concrete construction services, including pour and finish, dirt work, layout, forming, rebar, and mesh across the light commercial, structural, and other associated business areas. *Id*.

---

[2] Unless otherwise specified, all paragraph citations ("¶") are to Plaintiff's Complaint.

2

The Class Period begins on March 13, 2018.  ¶22.  On that day, the Company filed its Form 10-K for the period ended December 31, 2017 (the "2017 10-K").  *Id.*  Within the 2017 10-K, Defendants made several representations regarding the Company's goodwill, including, among other things, the following:

> As required, annual impairment testing of goodwill is performed as of October 31 of each year or whenever circumstances arise that indicate a possible impairment might exist.  Based on this testing, we determined that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill was not impaired, and no events have occurred since that date that would require an interim impairment test.

*Id.*  With respect to allowance for doubtful accounts, the 2017 10-K stated, in relevant part, the following:

> [T]he Company evaluates its contract receivables and costs in excess of billings and thoroughly reviews historical collection experience, the financial condition of its customers, billing disputes and other factors. The Company writes off uncollectible accounts receivable against the allowance for doubtful accounts if it is determined that the amounts will not be collected or if a settlement is reached for an amount that is less than the carrying value. As of December 31, 2017 and 2016, the Company had not recorded an allowance for doubtful accounts.

¶23.

Within the 2017 Form 10-K, Defendants also stated the following: (1) [o]ur indebtedness requires significant debt service payments that could adversely affect our financial condition and prevent us from fulfilling our obligations under our indebtedness; (2) [f]ailure to comply with the terms and conditions of any existing or future indebtedness would constitute an event of default; (3) [t]he Company was in compliance with all financial covenants at December 31, 2017; and (4) [t]he Company expects to meet its future internal liquidity and working capital needs, and maintain or replace its equipment fleet through capital expenditure purchases and major repairs, from funds generated by our operating activities for at least the next 12 months.  ¶26.

3

Defendants also represented that "no indicators of goodwill impairment were identified" throughout the Class Period.  ¶¶39, 45.

Additionally, the Individual Defendants signed SOX certifications throughout the Class Period stating that the financial information contained in Orion's filings with the Securities and Exchange Commission ("SEC") were accurate and disclosed any material changes to the Company's internal control over financial reporting as well as "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."  ¶¶27, 40, 46, 58.

The accounts of former Orion employees – along with Defendants' admissions – demonstrate that Defendants' statements were false and misleading.  Indeed, the Confidential Witnesses ("CWs") in the Complaint illustrate that Defendants were falsifying the Company's accrual spreadsheet and month-end workbook, improperly recognizing revenue on projects beyond what was authorized on the Company's contracts, and reporting significantly more revenue than the Company had actually received.  ¶¶28-37.

The truth began to emerge on October 18, 2018, when the Company announced that it expected a significant revenue shortfall for third quarter 2018 due to production delays and that it may perform an interim goodwill impairment test.  ¶49-51.  The same day, the Company announced that CFO DeAlmedida had resigned.  *Id*.  On this news, the Company's share price fell $0.68, or over 10%, to close at $6.11 per share on October 18, 2018, on unusually heavy trading volume.  ¶53.

On November 2, 2018, the Company filed its Form 10-Q with the SEC for the period ended September 30, 2018, in which it reported $125.1 million revenue, $6.36 million net loss, $69.48 million goodwill, and $81.18 million accounts receivable.  ¶57.  As to goodwill

4

impairment testing, the report stated, in relevant part: [a]fter evaluating all events, circumstances and factors which could affect the significant inputs used to determine fair value, the Company determined it was not more likely than not that an impairment existed at either reporting unit. *Id.*

On March 18, 2019, the Company revealed that it would be unable to timely file its annual report due to "extended evaluations of goodwill impairment testing and income tax adjustments, among other things" and that it expected to report a net loss. ¶60. On this news, the Company's share price fell $0.52, or over 12%, to close at $3.72 per share on March 18, 2019, on unusually heavy trading volume. ¶61. Additionally, on March 26, 2019, the Company reported $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge. ¶62. On this news, the Company's share price fell $0.22, or nearly 7%, to close at $2.97 per share on March 26, 2019, on unusually heavy trading volume. ¶63.

## V.    STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322. Additionally, courts must "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232.

VI.    **PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT**

A.    **Plaintiff Adequately Alleges Falsity**

1.    **Plaintiff Adequately Alleges That Defendants Made False and Misleading Statements Regarding Orion's Goodwill, Doubtful Accounts, Estimates on Construction Projects and Customer Disputed Accounts Receivable**

Plaintiff adequately alleges that Defendants made false and misleading statements regarding the Company's goodwill, doubtful accounts, estimates on construction projects and customer disputed accounts receivable.  For instance, on March 13, 2018, Defendants made several representations regarding the Company's goodwill, including, among other things, that "we determined that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill was not impaired, and no events have occurred since that date that would require an interim impairment test."  ¶22.  Defendants also represented that "no indicators of goodwill impairment were identified" throughout the Class Period.  ¶¶39, 45.  With respect to allowance for doubtful accounts, Defendants represented that "[a]s of December 31, 2017 and 2016, the Company had not recorded an allowance for doubtful accounts."  ¶23.

Defendants' admissions demonstrate that their statements were false and misleading.  On October 18, 2018, the Company announced that it expected a significant revenue shortfall for third quarter 2018 due to production delays and that it may perform an interim goodwill impairment test.  ¶49-51.  Additionally, on November 2, 2018, the Company reported $125.1 million revenue, $6.36 million net loss, $69.48 million goodwill, and $81.18 million accounts receivable.  ¶57.  With respect to goodwill impairment testing, the report stated, in relevant part: [a]fter evaluating all events, circumstances and factors which could affect the significant inputs used to determine fair value, the Company determined it was not more likely than not that an

6

impairment existed at either reporting unit. *Id.* On March 18, 2019, moreover, the Company revealed that it would be unable to timely file its annual report due to "extended evaluations of goodwill impairment testing and income tax adjustments, among other things" and that it expected to report a net loss. ¶60. On March 26, 2019, the Company reported $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge. ¶62.

The CW accounts also demonstrate the false and misleading nature of Defendants' representations. For instance, Plaintiff alleges that CW1 – who served as Regional Controller at Orion from April 2017 to March 2018 – stated that Orion was engaged in improper revenue recognition to enable the Company to meet its debt covenants. ¶30. According to CW1, Vice President ("VP") of Accounting Kristy Norris ("Norris") and Orion were booking revenue accruals and cost accruals for all regions without supporting documentation. *Id.* CW1 stated that Norris did not understand the requirements governing revenue recognition, and that Norris and Orion were recognizing revenue on projects outside of what was authorized on the Company's contracts. *Id.* CW1 stated that an accrual spreadsheet and the month-end workbook were falsified to support false journal entries to the general ledger. *Id.* As a result, according to CW1, Orion was improperly recognizing revenue on work that had not yet been completed. Additionally, CW1 stated that Norris told CW1 that Norris could recognize any revenue she needed in order to "make the numbers work." *Id.*

Additionally, CW1 stated that VP of Accounting Norris had set up a spreadsheet that contained contracts, amounts associated with the contracts, and the adjustments made regarding the contracts. ¶31. According to CW1, Assistant Controller Ashley Claypole used the spreadsheet to make general ledger entries, and the adjustments were made to book accruals to

7

increase the Company's Earnings Before Interest Taxes Depreciation and Amortization ("EBITDA"). *Id*. CW1 stated that Orion's motivation in making these improper adjustments was to be able to show a falsified profit and loss statement to enable Orion to meet its debt covenants. *Id*. CW1 stated that CFO DeAlmeida was involved in the falsification of the Company's accrual spreadsheet and the month-end workbook. *Id*. CW1 also stated that the Company falsified the Company's records so that executives could receive their bonuses. *Id*.

CW1 stated further that when CW1 became aware of the fraud around January 2018, CW1 called an internal whistleblower hotline. ¶32. CW1 stated that CW1 spoke directly with CFO DeAlmeida and told him that the conduct that CW1 witnessed was improper. *Id*. CW1 also said that CW1 reported the improper conduct to Jason Rash, who served as an external auditor at KPMG. *Id*.

CW1 also stated that CW1 participated in a meeting with CFO DeAlmeida and Director of Human Resources ("HR") Jenifer Lake ("Lake") in December 2017 involving a dredging project in the Company's Gulf Coast Region known as the Eastwest Jones Project. ¶33. CW1 stated that at the time, CFO DeAlmeida and Orion were attempting to make a $1 million "adjustment" to recognize revenue despite the fact that CW1 never received the necessary paperwork to support the claim that the project had been completed. *Id*. According to CW1, at the time the project was only about 40% completed. *Id*. CW1 said that Orion made the adjustments to book accruals to increase the Company's EBITDA. *Id*. CW1 stated further that dredging projects were low-margin, and that the Company was having a difficult time coming up with enough costs to justify the revenue recognition. *Id*.

The account of CW2 – who served as Orion's Division Controller for the Company's Marine Group from October 2017 to March 2018 – also demonstrates the falsity of Defendants'

8

statements. CW2 stated that in 2017, CW2 also reported that the Company was engaged in fraud with respect to revenue recognition. ¶35. Specifically, CW2 stated that in October 2017 – during the preparation of information for the fourth quarter of 2017 – CW2 found that the revenue that Orion had been reporting was significantly more than the Company had actually received. *Id*. CW2 also observed that the Company's improper revenue recognition had been occurring period after period. *Id*. CW2 stated further that Orion's Regional Controllers were not making their numbers and, as a result, Orion's executives – including VP of Accounting Norris – were engaged in manipulating the Company's revenue results. *Id*. CW2 stated further that CW2 discussed the overstatements with Erin Fazio, who served as Orion's Financial Planning and Analysis Manager, and Anthony Randazzo, who served as the Company's Senior Internal Audit Manager. *Id*.

CW2 also stated that CW2 reported the fraud regarding Orion's revenue recognition to Norris, Randazzo, and Brian Hayden ("Hayden"), who served as the Company's VP of Internal Audit. ¶36. CW2 stated that Hayden began a formal investigation that was conducted by the external auditors at KPMG. *Id*. CW2 stated that Director of HR Lake and Human Resources Manager Iris Edelen were heavily involved in the investigation. *Id.* Because these accounts illustrate the falsity of Defendants' representations, Plaintiff has adequately alleged falsity.[3]

---

[3] Although Defendants claim that Plaintiff's allegations regarding violations of Generally Accepted Accounting Principles ("GAAP") require more specificity (Motion at 11-14), courts have rejected this assertion. *See, e.g.*, *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 815, 821-22 (N.D. Ill. 2000) ("Although we agree with KPMG that the plaintiffs have failed to allege several details regarding Sabratek's allegedly improper revenue recognition practices, such as the dollar amounts by which Sabratek's financial statements have been misstated as a result of these transactions, the plaintiffs have alleged sufficient facts to meet their burden at this stage in the litigation.").

### 2.    Defendants' SOX Certifications Are Actionable as Materially False and Misleading Statements

Defendants' SOX certifications are actionable as false statements of fact.  Courts have held that false SOX certifications are actionable under the Exchange Act when defendants are severely reckless in signing such certifications.  *See, e.g.*, *Wieland v. Stone Energy Corp.*, Civil Action No. 05-2088, 2007 WL 2903178, at *7 (W.D. La. Aug. 17, 2007) ("Plaintiffs have also sufficiently alleged that the Sarbanes-Oxley certifications that [defendants] signed in connection with [the company's] quarterly reports contained false and misleading information."); *In re OCA, Inc. Sec. and Derivative Litig.*, No. 05-2165, 2006 WL 3747560, at *16 (E.D. La. Dec. 14, 2006) ("The Court therefore finds that plaintiff has adequately alleged that statement[s] in defendants' Sarbanes-Oxley certifications were false or misleading when made.").  "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements."  *Middlesex Retirement Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189-1190 (C.D. Cal. 2007).

Here, Defendants represented that Orion's internal controls over financial reporting were adequate and that the Company's financial statements fairly presented, in all material respects, the financial condition and results of operations of the Company.  ¶¶27, 40, 46, 58.  These representations were false and misleading because Defendants admitted that the Company was unable to file its Form 10-K for the year ended December 31, 2018 "resulting from unanticipated delays that have impacted our ability to timely prepare our financial statements and complete our assessment of the effectiveness of internal controls over financial reporting in order for our auditors to perform all their required procedures."  ¶60.  Plaintiff alleges that Defendants were severely reckless in signing the SOX certifications because, among other things, Defendants were falsifying the Company's accrual spreadsheet and month-end workbook, improperly

recognizing revenue on projects beyond what was authorized on the Company's contracts, and reporting significantly more revenue than the Company had actually received.   ¶¶28-37. Accordingly, Defendants' SOX certifications are actionable.  *OCA*, 2006 WL 3747560, at *16.

### 3. The PSLRA's Safe Harbor Provision Does Not Protect Defendants' False and Misleading Statements

Contrary to Defendants' contention (Motion at 22-25), the PSLRA's safe harbor provision does not shield Defendants from liability.  Adequate cautionary language must identify important factors that could cause actual results to differ materially from those in the forward-looking statement.  15 U.S.C. §78u-5(c)(1)(A); *Rougier v. Applied Optoelectronics, Inc*, No. 4:17-CV-2399, 2019 WL 6111516, at *10 (S.D. Tex. Mar. 27, 2019).  The "requirement for meaningful cautions calls for substantive company-specific warnings based on a realistic description of the risks applicable to the particular circumstances, not merely a boilerplate litany of generally applicable risk factors." *Lormand*, 565 F.3d at 244-45.  "To avail themselves of safe harbor protection under the meaningful cautionary language prong, defendants must demonstrate that their cautionary language was not boilerplate and conveyed substantive information." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247 (2d Cir. 2016).  Thus, Defendants "carry the burden of demonstrating that they are protected by the meaningful cautionary language prong of the safe harbor . . . ." *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010).

Initially, Defendants rely upon *In re Blockbuster Inc. Sec. Litig.*, No. 3:03-CV-0398-M, 2004 WL 884308 (N.D. Tex. Apr. 26, 2004) and *Kurtzman v. Compaq Computer Corp.*, No. CIV.A.H-99-1011, 2000 WL 34292632 (S.D. Tex. Dec. 12, 2000) to assert that "where a statement is 'mixed,' *i.e.*, contains both forward-looking and non-forward-looking elements, and where a plaintiff alleges the entire statement is misleading because it omitted material information, courts determine whether the statement as a whole, not a particular part, is

misleading." Motion at 23. Defendants are wrong. These cases precede the Fifth Circuit's pronouncement in *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676 (5th Cir. 2014), that "a "mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present." *Id.* at 691; *see also Rougier*, 2019 WL 6111516, at *10 ("A forward-looking statement . . . whose falsity consists of a lie about a present fact is not protected by the PSLRA's safe harbor provision."). Other circuits have held similarly.[4]

Defendants' false and misleading statements are not protected by the PSLRA's safe harbor provision for several reasons. First, the provision does not apply to Defendants' statements of current or historical fact. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 699 (5th Cir. 2005); *Rougier*, 2019 WL 6111516, at *10; *see also* ¶22 ("we ***determined*** that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill ***was not impaired***, and no events ***have occurred*** since that date that would require an interim impairment test"); ¶23 ("[a]s of December 31, 2017 and 2016, the Company ***had not recorded*** an allowance for doubtful accounts"); ¶26 ("[t]he Company ***was in compliance*** with all financial covenants at December 31, 2017"); ¶39 ("[n]o indicators of goodwill impairment ***were identified*** during the three months ended March 31, 2018"); ¶45 ("[n]o indicators of goodwill

---

[4]     *See, e.g.*, *Cutler v. Kirchner*, No. 15-56897, 2017 WL 3530893, at *4 (9th Cir. Aug. 17, 2017) ("[W]here defendants make mixed statements . . . the non-forward-looking statements are not protected by the safe harbor."); *Vivendi*, 838 F.3d at 246 ("[A] statement may contain some elements that look forward and others that do not, and forward-looking elements may be severable from non-forward-looking elements."); *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009) ("[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present."); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) ("a mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present"); *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 45 n.13 (1st Cir. 2008) ("In analyzing a forward-looking statement, the aspect of the statement that is based on the present fact must be distinguished from the aspect of the statement that is a future projection.").

12

impairment *were identified* during the six months ended June 30, 2018"). "It would be perverse indeed if an offeror could knowingly misrepresent historical facts but at the same time disclaim those misrepresented facts with cautionary language." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004).

Second, Defendants' disclaimers do not constitute meaningful cautionary language because they were vague, generalized statements that were not tailored to the specific risks alleged. *Lormand*, 565 F.3d at 244-45. For example, Defendants claim that the Company made specific cautionary statements regarding goodwill. Motion at 24. However, statements such as "[i]n the future, the Company's estimated fair value could be negatively impacted by extended declines in our stock price, changes in macroeconomic indicators, sustained operating losses and other factors which may affect our assessment of fair value" (Doc. 20-1 at A-61, A-98, A-138) constitute mere vague, generalized statements. *See Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239, 251-252 (D. Mass. 2006) (holding that a warning that "general economic and business conditions" could cause the company's performance to be materially different is not sufficiently detailed). Similarly, Orion's disclaimers that "[s]ignificant losses on receivables could adversely affect the Company's financial position, results of operations and overall liquidity" (Doc. 20-1 at A-60, A-97, A-136) constitute "factors that are so broad that they apply to *any* business that sells products to consumers." *Yanek v. Staar Surigcal Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005) (emphasis in original). Indeed, a "kitchen-sink disclaimer, listing garden-variety business concerns that could affect *any* company's financial well-being" does not constitute "meaningful cautionary language." *Vivendi*, 838 F.3d at 247 (italics in original).

Third, Defendants' statements also failed to warn investors that the risks alleged had already materialized and were of greater magnitude than portrayed. *Lormand*, 565 F.3d at 246-

48.   For instance, Defendants' disclaimer that "we *could* suffer contract losses if we fail to accurately estimate our costs or fail to execute within our cost estimates on fixed-price, lump-sum contracts" (¶25) failed to disclose that Defendants were *already* falsifying the Company's accrual spreadsheet and month-end workbook, improperly recognizing revenue on projects outside of what was authorized on the Company's contracts, and reporting significantly more revenue than the Company had actually received.   ¶¶28-37.   Similarly, Defendants' warnings regarding construction delays due primarily to weather (Doc. 20-1 at 177-79) failed to adequately warn investors of the magnitude of the risks alleged.   ¶59.   "To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit."  *Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981), *aff'd*, 459 U.S. 375 (1983).

Finally, dismissal under the safe harbor defense requires a stringent showing by Defendants.  There must be sufficient cautionary language or risk disclosure such that reasonable minds could not disagree that the challenged statements were not misleading.  *Lormand*, 565 F.3d at 248.   Meaningfulness generally cannot be determined at the pleading stage because "any issuer could list its lines of business, say we could have problems in any of these, and avoid liability for statements implying that no such problems were on the horizon even if a precipice was in sight."  *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 733 (7th Cir. 2004).  Indeed, determining what constitutes "meaningful cautionary language" is "difficult if not impossible" to decipher, particularly "at the pleading stage, before plaintiffs have access to discovery."  *Id.* at 729, 734.

Thus, application of the safe harbor provision "is not so obvious as to be decided as a matter of law." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 877 (3d Cir. 2000).[5]

### B.  Plaintiff Adequately Alleges Scienter

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314.  "To plead scienter adequately, plaintiffs must state with particularity facts giving rise to a strong inference that the party knew that it was publishing materially false information, or the party was severely reckless in publishing such information." *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 534 (5th Cir. 2008). Importantly, "courts must consider the complaint in its entirety . . . .  The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original).  Accordingly, "[i]n making this determination, the court must review all the allegations holistically." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011).

A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324-26.  "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference.  *Id.* at 324.  Moreover, a

---

[5]  Contrary to Defendants' suggestion (Motion at 20-22), Plaintiff does not seek to invoke the presumption of reliance in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).

"tie" goes to the plaintiffs when there are multiple plausible theories at the pleading stage. *Lormand*, 565 F.3d at 254-55.

### 1. Defendants' Admissions Confirm that Defendants Were Aware that Their Statements During the Class Period Were False and Misleading

Defendants' admissions constitute powerful evidence of Defendants' scienter. A "later statement may suggest that a defendant had contemporaneous knowledge of the falsity of his statement, if the later statement directly contradicts or is inconsistent with the earlier statement." *In re Read-Rite Corp. Sec. Litig*., 335 F.3d 843, 846 (9th Cir. 2003); *see also Aldridge v. A.T. Cross Corp*., 284 F.3d 72, 76-83 (1st Cir. 2002) (holding that subsequent public statements supported "an extremely reasonable inference" that the company had previously engaged in improper conduct); *In re BP p.l.c. Sec. Litig*., No. 4:10-md-2185, 2012 WL 432611, at *56 (S.D. Tex. Feb. 13, 2012) (holding that CEO's "own admissions" contributed to a strong inference of scienter).

Here, Defendants admitted: (1) that the Company expected a significant revenue shortfall for third quarter 2018 due to production delays and that Orion may perform an interim goodwill impairment test (¶49-51); (2) reported revenue of $125.1 million, a $6.36 million net loss, $69.48 million in goodwill, and $81.18 million in accounts receivable (¶57); (3) that it was not more likely than not that an impairment existed at either reporting unit (*Id*.); (4) "extended evaluations of goodwill impairment testing and income tax adjustments, among other things" that would generate a net loss (¶60); and (5) a $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge. ¶62. These admissions directly contradict Defendants' representations during the Class Period that "we determined that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill was not impaired, and no events have occurred since

16

that date that would require an interim impairment test" (¶22), "no indicators of goodwill impairment were identified" (¶¶39, 45), and "[a]s of December 31, 2017 and 2016, the Company had not recorded an allowance for doubtful accounts."  ¶23.  Thus, "the admissions by the individual defendants, as alleged in the complaint, directly and cogently tend to prove their state-of-mind at the time of their misleading statements and omissions, *i.e.*, they are evidence that the defendants actually knew earlier that the course of action would turn out badly."  *Lormand*, 565 F.3d at 254.

### 2.    The CW Accounts Bolster the Strong Inference of Scienter Alleged

The accounts of the CWs alleged in the Complaint add to the strong inference of scienter alleged.   Although after *Tellabs* "courts have cautioned that anonymous allegations in a complaint frustrate[] a court's ability to consider plausible competing inferences," *Tellabs* "did not prohibit a plaintiff from using confidential witness statements." *Rougier*, 2019 WL 6111516, at *11.  "The Fifth Circuit instead allows a plaintiff to use confidential sources as long as those sources are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information pleaded."  *Id*.; *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002); *MicroCapital Fund LP v. Conn's Inc.*, No. 4:18-CV-1020, 2019 WL 3451153, at *15 (S.D. Tex. July 24, 2019).

Such is the case here.  With respect to CW1 and CW2, Plaintiff adequately alleges details including: (1) the person's job description; (2) individual responsibilities; (3) specific employment dates; and (4) where and when the confidential source came to know the information supporting an inference of scienter,  ¶¶29-36; *MicroCapital*, 2019 WL 3451153, at *15 n.30 (S.D. Tex. July 24, 2019).  Even if the Court were to assign "less weight to the CW allegations," a "reasonable person may draw the plausible inference from the allegations in the

17

complaint that Defendants made material misrepresentations or omissions." *Hall v. Rent-A-Ctr., Inc.*, No. 4:16CV978, 2017 WL 6379334, at *8 (E.D. Tex. Dec. 14, 2017). "Therefore, when considered holistically, the CW allegations contribute to a strong inference of scienter . . . ." *MicroCapital*, 2019 WL 3451153, at *15.[6]

> **3.     The Announcement of CFO DeAlmeida's Resignation on the Same Day as the Company's Announcement of a Significant Revenue Shortfall Adds to the Strong Inference of Scienter Alleged**

Courts have held that coupled with other allegations, suspiciously-timed resignations can add to a strong inference of scienter. *See, e.g.*, *Hall v. Rent-A-Ctr., Inc.*, No. 4:16CV978, 2017 WL 6398742, at *34 (E.D. Tex. Oct. 19, 2017), *report and recommendation adopted,* No. 4:16CV978, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) (holding that allegations regarding a company's terminations and resignations added to strong inference of scienter); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-976 (N.D. Cal. 2009) ("the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances"); *Kaltman v. Key Energy Services, Inc.*, 447 F. Supp. 2d 648, 664 (W.D. Tex. 2006) (holding that the CEO's termination is "a factor which supports a strong inference of scienter"). Here, CFO DeAlmeida resigned ***on the same day*** as Orion's announcement of a significant revenue shortfall. ¶¶49-50. Accordingly, this fact adds to the strong inference of scienter alleged. *See Bielousov v. GoPro, Inc*., No. 16-cv-06654-CW,

---

[6]     Defendants assert that because CW1 and CW2 worked at Orion for less than a year – and because both departed near the beginning of the Class Period – that it is impossible for the Court to rely upon them. Motion at 7-8. Such is not the case. *See In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558, at *15 (M.D. Ga. Mar. 23, 2018) (a witness' "statements are not rendered irrelevant merely because [the witness] was not employed during the Class Period"). Additionally, "the fact that the financial statements for the year in question were not restated does not end [plaintiff's] case when he has otherwise met the pleading requirements of the PSLRA." *Aldridge*, 284 F.3d at 83. Moreover, Defendants' assertions regarding the CW's knowledge of the percentage-of-completion accounting method (Motion at 9-10) constitute factual disputes unsuitable for resolution on a motion to dismiss.

2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) (holding that resignation of the company's president bolstered the strong inference of scienter alleged); *Ho v. Duoyuan Global Water, Inc*., 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012) (holding that defendant's resignation to "adds to the inference of scienter" because the timing of the resignation coincided with the company's release of negative information).

### 4.   Defendants' SOX Certifications Add to the Strong Inference of Scienter Alleged

Defendants' SOX certifications also add to the strong inference of scienter alleged.  SOX certifications properly add to the scienter calculus because such certifications require executives "to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov v. GoPro, Inc*., No. 16-cv-06654-CW, 2017 WL 3168522, at *7 (N.D. Cal. July 26, 2017); *Wieland*, 2007 WL 2903178, at *7; *OCA*, 2006 WL 3747560, at *22.  Here, Plaintiff alleges that Defendants were severely reckless in signing the SOX certifications because, among other things, Defendants were falsifying the Company's accrual spreadsheet and month-end workbook, improperly recognizing revenue on projects beyond what was authorized on the Company's contracts, and reporting significantly more revenue than the Company had actually received.  ¶¶28-37.  Such facts therefore support a strong inference of scienter. *See In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019) ("Defendants continued to recognize revenue and make SOX certifications even after receiving reports showing higher rates of default on the questionable line items. The facts alleged by Plaintiffs as to Avon show a similarly cavalier attitude towards revenue recognition, thereby providing supplemental support for a strong inference of scienter. . . ."); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 724 (W.D. Tex. 2010).

19

### 5.    Defendants' Desire to Comply with Orion's Debt Covenants Supports a Strong Inference of Scienter

Defendants' desire to ensure compliance with the Company's debt covenants adds to the strong inference of scienter alleged.  While insufficient alone to establish scienter, courts have held that the motive to manipulate financial results "so as not to violate loan covenants" supports a strong inference of scienter.  *Howard v. Everex Sys., Inc*., 228 F.3d 1057, 1063-1064 (9th Cir. 2000); *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018) (holding that while scienter may not be grounded solely on motives universal to corporate executives, the Fifth Circuit has recognized an exception when a company is particularly motivated to maintain or improve its credit rating to receive crucial funds) (citing *Shaw*, 537 F.3d at 544).  CW1 stated that Orion was engaged in improper revenue recognition to enable the Company to meet its debt covenants.  ¶¶30-33.  These allegations, therefore, add to the strong inference of scienter alleged. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004) (holding that allegations that defendants "were motivated to engage in fraud in order to forestall [the company's] default of its bank loan agreement and to preserve the Company's ability to borrow pursuant to its credit facility" are "probative of scienter").

These facts analyzed collectively – as the Court is required to do under *Tellabs* – demonstrate that Plaintiff has adequately alleged scienter.[7]

### C.    Plaintiff Adequately Alleges Loss Causation

 The PSRLA provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged . . . caused the loss for which the plaintiff seeks to recover

---

[7]    Contrary to Defendants' contention (Motion at 16-18), "the First Amended Complaint goes beyond generally alleging the collective knowledge of [the company's] officers." *Rougier*, 2019 WL 6111516, at *12.

damages." 15 U.S.C. §78u-4(b)(4). To adequately plead loss causation, a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347. Importantly, Plaintiff need only comply with the notice pleading requirements of Rule 8 to adequately allege loss causation. *Lormand*, 565 F.3d at 258; *see also Rougier*, 2019 WL 6111516, at *13 ("Notably, this element of a Section 10(b) claim need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief and provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *Ramirez*, 334 F. Supp. 3d at 858 ("The pleading standard for loss causation is not heightened as it is with scienter but is only the plausibility standard."). Thus, the pleading requirements for loss causation "are not meant to impose a great burden upon a plaintiff." *Dura*, 544 U.S. at 347.

Plaintiff has adequately alleged loss causation. Specifically, Plaintiff alleges that on October 18, 2018, the Company announced that it expected a significant revenue shortfall for third quarter 2018 due to production delays. ¶¶49-53, 78-79. On the same day, Orion also announced the resignation of CFO DeAlmeida. *Id*. On this news, the Company's share price fell $0.68, or over 10%, to close at $6.11 per share on October 18, 2018, on unusually heavy trading volume. *Id*. On March 18, 2019, Orion revealed that the Company would be unable to timely file its annual report due to "extended evaluations of goodwill impairment testing and income tax adjustments, among other things." ¶¶60-61, 80-81. The Company also announced that it "expects that a significant change in results of operations from the corresponding period for the last fiscal year will be reflected in its financial statements." *Id*. On this news, the Company's share price fell $0.52, or over 12%, to close at $3.72 per share on March 18, 2019, on unusually heavy trading volume. *Id*. Plaintiff also alleges that on March 26, 2019, the Company reported

21

$94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge.  ¶¶62-63, 82-83.  On this news, the Company's share price fell $0.22, or nearly 7%, to close at $2.97 per share on March 26, 2019, on unusually heavy trading volume.  *Id.*  These allegations provide Defendants "with some indication of the loss and the causal connection that the plaintiff has in mind."  *Dura*, 544 U.S. at 347.

Defendants contend that Plaintiff purportedly has not adequately alleged loss causation because: (1) the Complaint "does not identify the Defendants' representations it challenges with any particularity, much less establish a direct link between them and the disclosures in Orion's third quarter 2018 10-Q and 2018 10-K;" (2) the Complaint does not "address why, after purportedly learning of and investigation those allegations, KPMG still supplied its unqualified opinions that Orion's financial statements conformed to GAAP and that the Company maintained effective [internal controls for financial reporting] ("ICFR");" (3) "[n]o subsequent disclosures identify previous Company statements as incorrect when made;" and (4) the Company's October and November 2018 statements caused a drop in Orion's stock price and therefore cannot establish loss causation.  Motion at 19-20.  All of these arguments fail.

First, as demonstrated above, Plaintiff has adequately alleged "a facially plausible causal relationship between the fraudulent statements or omissions and plaintiff's economic loss." *Lormand*, 565 F.3d at 258.  Indeed, Plaintiff has adequately alleged that Defendants' representations regarding Orion's goodwill, doubtful accounts, compliance with financial covenants, expectations to meet Orion's future internal liquidity and working capital needs, estimates on construction projects and reserves on certain customer disputed accounts receivables, and the Company's internal control over financial reporting all related to the Company's disclosures between October 2018 and March 2019.  ¶¶49-66; 76-84.

22

Second, the fact that KPMG may have provided unqualified opinions that Orion's financial statements conformed to GAAP and that the Company maintained effective ICFR does not insulate Defendants from liability. *See, e.g.*, *In re St. Jude Medical, Inc. Sec. Litig.*, Civil No. 10-0851 (SRN/TNL), 2011 WL 6755008, at *7 (D. Minn. Dec. 23, 2011) (holding that the fact that the company's "independent outside auditor issued an unqualified audit opinion in each of the relevant years" does "not preclude a claim for securities fraud"); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008) (holding that the auditor's "unqualified opinion did not necessarily exonerate [the company]"); *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1314 n.13 (C.D. Cal. 1996) ("The fact that Chantal's independent auditor may have approved the accounting methods will not shield Chantal from liability for deception such methods may have caused."). Defendants cite no authority to the contrary.

Third, by contending that none of Orion's subsequent disclosures identified previous Company statements as incorrect, Defendants are advocating a fact-for-fact standard that conflicts with *Dura*. *Dura* did not confine the "relevant truth" to explicit identification of the earlier misrepresentations alleged. Indeed, the Fifth Circuit has declared that to be corrective, a disclosure need only relate to the alleged misrepresentation – it need not precisely mirror the earlier misrepresentation. *Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014). If "a fact-for-fact disclosure were required to establish loss causation, a defendant could defeat liability by refusing to admit the falsity of its prior misstatements." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009).

Finally, Defendants' assertion that Orion's October and November 2018 statements cannot serve as a basis for loss causation because the Company's stock price dropped afterwards

23

is meritless.  Since *Dura* establishes that the relevant truth may "leak out" (*Dura*, 544 U.S. at 342), "loss causation may be pleaded on the theory that the truth gradually emerged through a series of partial disclosures and that an entire series of partial disclosures caused the stock price deflation."  *Lormand*, 565 F.3d at 261 & n.31; *Amedisys*, 769 F.3d at 322.  Indeed, as *Dura*, *Lormand*, and *Amedisys* provide, Plaintiff alleges that truth began to emerge with the Company's October 2018 disclosures, but that Defendants did not fully reveal the truth until March 2019.  ¶¶49-66.  Because the "First Amended Complaint sets forth the specific statements that relate to Defendants' previous statements and how the marketplace perceived these corrective disclosures," Plaintiff's allegations "satisfy Rule 8(a) in pleading loss causation."  *Rougier*, 2019 WL 6111516, at *13.

### D.      Plaintiff Adequately Alleges Control Person Liability

Contrary to Defendants' assertion (Motion at 25 n.8) – and as demonstrated above – Plaintiff has adequately pled a primary violation, and has also sufficiently alleged the Individual Defendants' control over the Company.  ¶¶17-20; 103-06.  Thus, Plaintiff has adequately alleged a control person claim.  *Rougier*, 2019 WL 6111516, at *14.

## VII.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.  Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477-78 (5th Cir. 2018).

Dated:  November 25, 2019              GLANCY PRONGAY & MURRAY LLP


                                       By:  *s/ Ex Kano S. Sams II*
                                       Lionel Z. Glancy
                                       Robert V. Prongay
                                       Ex Kano S. Sams II
                                       Lesley F. Portnoy
                                       Charles H. Linehan
                                       Pavithra Rajesh
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, CA 90067
                                       Telephone: (310) 201-9150
                                       Facsimile: (310) 201-9160
                                       Email: esams@glancylaw.com

                                       Joe Kendall
                                       Texas Bar No. 11260700
                                       KENDALL LAW GROUP, PLLC
                                       3232 McKinney Avenue, Suite 700
                                       Dallas, Texas 75204
                                       Telephone: 214-744-3000
                                       Facsimile: 214-744-3015
                                       Email: jkendall@kendalllawgroup.com

                                       *Attorneys for Plaintiff John Heck*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2019, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system of the United States District Court for the Southern District of Texas, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ Ex Kano S. Sams II*
Ex Kano S. Sams II
