## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN HECK, Individually and On Behalf of All Others Similarly Situated, Plaintiffs, | § § § § | |
| VS. | § § | CIVIL NO. 4:19-cv-01337 |
| ORION GROUP HOLDINGS, INC., MARK R. STAUFFER, CHRISTOPHER J. DEALMEIDA and ROBERT L. TABB Defendants | § § § § § § | |

---

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS

---

ROBERT B. BIECK, JR. (*Attorney in Charge*)
ALEXANDER N. BRECKINRIDGE V
THOMAS E. SLATTERY
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8000
Fax: (504) 582-8583

JAMES ARDOIN
JONES WALKER, LLP
811 Main Street, Suite 2900
Houston, TX 77002
Phone: (713) 437-1811
Fax: (713) 437-1946

**ATTORNEYS FOR DEFENDANTS,
ORION GROUP HOLDINGS, INC.,
MARK R. STAUFFER, CHRISTOPHER J.
DEALMEIDA, AND ROBERT L. TABB**

{N3936459.1}

## TABLE OF CONTENTS

**Page**

I.　　SUMMARY OF ARGUMENT ...................................................................................... 1

II.　　ARGUMENT .................................................................................................................. 1

　　A.　　**Plaintiff Fails to Allege Misrepresentations.** ...........................................1

　　　　1.　　*Subsequent Disclosures and SOX Certifications Cannot Transform Earlier Statements into Misrepresentations.*....................................................1

　　　　2.　　*Confidential Witnesses' Allegations Fail to Demonstrate Actionable Misrepresentations.*.......................................................................................5

　　B.　　**Safe Harbor Protects Orion's Tailored Disclaimers Regarding Risks.** ............7

　　C.　　**Plaintiff Does Not Provide Compelling Inferences of Scienter.** .........................8

　　　　1.　　*Subsequent Disclosures Do Not Evidence Scienter.* ....................................9

　　　　2.　　*Confidential Witnesses' Accounts and Plaintiff's Allegations Regarding SOX Certifications Do Not Demonstrate Scienter Due to Group Pleading.*.......................................................................................9

　　　　3.　　*Former CFO DeAlmeida's Resignation Does Not Demonstrate Scienter.* .......................................................................................12

　　　　4.　　*Defendants' Purported Desire to Comply with Debt Covenants Does Not Provide a Compelling Scienter Inference.* ..........................................13

　　D.　　**Plaintiff Does Not Satisfy Loss Causation Requirements.** ...............................14

III.　　CONCLUSION.............................................................................................................. 15

CERTIFICATE OF SERVICE .......................................................................................................16

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ....................................................................................9, 12

*In re Alamosa Holdings, Inc. Sec. Litig.*,
  382 F. Supp. 2d 832 (N.D. Tex. 2005) ..........................................................................4

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
  568 U.S. 455, 133 S. Ct. 1184 (2013)..........................................................................15

*Bain Enters., LLC v. Mt. States Mut. Casaulty Co.*,
  267 F. Supp. 3d 796 (W.D. Tex. 2016).........................................................................3

*In re Blockbuster Inc. Sec. Litig.*,
  2004 U.S. Dist. LEXIS 7173 (N.D. Tex. Apr. 26, 2004).............................................7

*In re BP p.l.c. Sec. Litig.*,
  2016 WL 3090779 (S.D. Tex. May 31, 2016) ..............................................................7

*Catogas v. Cyberonics, Inc.*,
  292 F. App'x 311 (5th Cir. 2008) ...............................................................................15

*Central Laborers' Pension Fund v. Integrated Electrical Services Inc.*,
  497 F.3d 546 (5th Cir. 2007) ......................................................................................12

*Chu v. Sabratek Corp.*,
  100 F. Supp. 2d 815 (N.D. Ill. 2000) .........................................................................10

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627 (2005)..........................................................................15

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
  270 F.3d 645 (8th Cir. 2001) ......................................................................................14

*In re Franklin Bank Corp. Sec. Litig.*,
  782 F. Supp. 2d 364 (S.D. Tex. 2011) ..........................................................................4

*Hall v. Rent-A-Ctr., Inc.*,
  2017 U.S. Dist. LEXIS 205959 (E.D. Tex. Oct. 19, 2017) .......................................12

---

[1] See Exhibit 4 for a table identifying where to find the full text of each unpublished case Defendants cite.

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) ..............................................................................8, 14

*Kaltman v. Key Energy Servs.*,
   447 F. Supp. 2d 648 (W.D. Tex. 2006)..............................................................12, 13

*Longoria v. Thaler*,
   2010 U.S. Dist. LEXIS 24094 (S.D. Tex. Mar. 16, 2010)........................................3

*Masel v. Villarreal*,
   924 F.3d 734 (5th Cir. 2019) ..............................................................................2, 3

*Plaisance v. Schiller*,
   2019 U.S. Dist. LEXIS 42073 (S.D. Tex. Mar. 14, 2019) (Lake, J.)................12, 15

*Prause v. TechnipFMC, PLC*,
   2019 U.S. Dist. LEXIS 44230 (S.D. Tex. Jan. 18, 2019) ........................................4

*R2 Investments LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ..................................................................................9

*Ramirez v. Exxon Mobil Corp.*,
   334 F. Supp. 3d 832 (N.D. Tex. 2018) ..................................................................14

*Rosenzweig v. Azurix Corp.*,
   198 F. Supp. 2d 862 (S.D. Tex. 2002) ...............................................................9, 13

*Rubinstein v. Collins*,
   20 F.3d 160 (5th Cir. 1994) ....................................................................................7

*Schott v. Nobilis Health Corp.*,
   211 F. Supp. 3d 936 (S.D. Tex. Sept. 29, 2016)....................................................12

*Shushany v. Allwaste, Inc.*,
   992 F.2d 517 (5th Cir. 1993) .................................................................................10

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ..............................................................................9, 12

*Stack v. Lobo*,
   903 F. Supp. 1361 (N.D. Cal. 1995) .......................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499 (2007)......................................................................8

*In re Vivendi S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)....................................................................................7

**Statutes**

Private Securities Litigation Reform Act...........................................................................7, 10, 15

Securities Exchange Act Section 10(b), 15 U.S.C. § 78u-4(b)(4) .................................................15

**Other Authorities**

Fed. R. Evid. 201 ........................................................................................................................3

H.R. CONF. REP. NO. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730..........................................7

Defendants, Orion Group Holdings, Inc. ("Orion" or the "Company"), Orion CEO Mark R. Stauffer, CFO Robert L. Tabb, and former CFO Christopher J. DeAlmeida (collectively, "the Individual Defendants") together file this Reply to Plaintiff's Opposition (R. Doc. 26) (the "Opposition," or "Opp.") to Defendants' Motion to Dismiss Amended Complaint or in the Alternative, Motion for More Definite Statement (R. Doc. 24) (the "Motion") regarding Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws filed April 11, 2019 (R. Doc. 23) (the "Amended Complaint"), and ask this Court reject Plaintiff's Opposition arguments and dismiss the Amended Complaint with prejudice.

## I.    SUMMARY OF ARGUMENT

The facts of this case show a company that came forward to warn the public of the effects of unexpected bad news, not one that misled investors. Record-breaking rainfall and customer-driven delays in the second half of 2018 frustrated Orion's previously expected revenue and ultimately led to an impairment of its goodwill. In his pursuit to state a claim that can survive a motion to dismiss, Plaintiff recasts Orion's disclosures before the unexpected events as knowing misrepresentations, relying on unrelated subsequent statements and questionable accounts from confidential witness. His claims fail to identify misrepresentations or demonstrate loss causation, and likewise fail to allege scienter.

## II.    ARGUMENT

### A.    Plaintiff Fails to Allege Misrepresentations.

*1.    Subsequent Disclosures and SOX Certifications Cannot Transform Earlier Statements into Misrepresentations.*

Plaintiff's Opposition cites Defendants' subsequent statements and SOX certifications to argue the Amended Complaint adequately alleges previously made false statements regarding (1) Company goodwill, (2) doubtful accounts, (3) financial covenant compliance, (4) estimates on

{N3936459.1}                                      1

construction projects to recognize revenue, and (5) internal controls for financial reporting ("ICFR"). Opp. at 6–7, 10–11. Plaintiff's Opposition persists with the Amended Complaint's false premise: announcements of unexpected bad news by public companies conclusively establish that previous disclosures by management misrepresented material facts.

Plaintiff mischaracterizes Orion's reports of goodwill impairment, financial losses, and a late-filed 10-K as "admissions" to suggest previous statements regarding goodwill, expected revenues, and ICFR were false when made. Opp. at 6–7, 10. But, as the Fifth Circuit recently made clear, use of subsequent events to demonstrate that a previous representation was false when made requires more than Plaintiff provides here.

In *Masel v. Villarreal*, 924 F.3d 734 (5th Cir. 2019), the Fifth Circuit considered whether the investor plaintiff adequately stated securities claims against defendants, a group of medical service professionals and entities, that touted a "secret sauce" collections algorithm and billing practices able to predict payouts for procedures and collect 50% or more of outstanding accounts receivable. As evidence the defendants made false representations, plaintiff cited their later failure to deliver anything even approaching the promised results. *Id*. at 749–751.

The *Masel* court cited a "helpful analogy" and concluded the divergence between plaintiff's statements and later performance, without the presence of any intervening event, supported the existence of a misrepresentation:

> suppose a pianist represents that he is well-trained and commits to perform Gershwin's Rhapsody in Blue at a concert some time in the future. If he later arrives unable to play even Chopsticks, it becomes highly unlikely that he was a talented piano player to begin with. Here, [defendant] claimed to possess an algorithm that enabled her to pinpoint the payout for a given procedure within a 10–20% margin of error. The complaint alleges that [defendant] collected nothing on more than half of all claims and less than 1% on 75% of all claims.

{N3936459.1}                                                    2

*Id*. at 750. Because the defendants in that case cited no intervening events that caused their failure to perform as predicted, the court found it plausible the defendant in question misrepresented capabilities when pitching the investment. *Id*. Similarly, near-total non-performance contradicted earlier statements by the same defendant that "she had the ability to generate $50,000" and typically collected 50% or more of accounts receivable. *Id*. at 751.

In this case, far from being misrepresentations, Defendants' statements disclosing impairment, revenue shortfall, and a late-filed 10-K reflect a company coming forward to disclose unexpected circumstances that intervened to impair Company goodwill, delay a public filing, and produce financial losses. For instance, as the Amended Complaint at ¶ 49 states, continuous rain throughout Orion's Texas market areas in the third quarter of 2018 caused significant production delays in the concrete segment. These rains were not just "continuous," but in fact record-breaking: the Dallas-Fort Worth area received 12.69 inches of rain of rain in September and 15.66 inches in October, each a record for the month and combined the highest two-month total since recordkeeping began in 1899.[1] For the year, Dallas-Fort Worth saw its second-highest total rainfall in history at 55.97 inches. *Id.*[2] This record rainfall happened well after the supposedly false statements and plaintiff has alleged nothing to suggest otherwise.

---

[1] *See* Exhibit 1, Monthly and Annual Precipitation Tables—Fort Worth/Dallas and Houston, National Weather Service. "Courts may, for example, take judicial notice under Rule 201 (b)(2) of court records, scientific facts, **weather records**, or historical and geographical data." *Longoria v. Thaler*, 2010 U.S. Dist. LEXIS 24094, at *2 (S.D. Tex. Mar. 16, 2010) (emphasis added). *See also Bain Enters., LLC v. Mt. States Mut. Casaulty Co.,* 267 F. Supp. 3d 796, 819 (W.D. Tex. 2016) (taking judicial notice of weather reports in construction insurance dispute).

[2] The Houston area also received above-average rains, 8.6 inches in September (when the historical mean is 4.07 inches) and 7.02 inches in October (when the historical mean is 4.23 inches). Exhibit 2.

Similarly, the Opposition identifies Defendants' SOX certifications regarding ICFR as actionable misrepresentations because the Company filed its 2018 10-K late "resulting from unanticipated delays that have impacted our ability to timely prepare our financial statements and complete our assessment" of ICFR.  Opp. at 10 (quoting Orion 12b-25, A-223). A late filing without more does not evidence a prior actionable misrepresentation, especially here because Plaintiff omits that when Orion did file its 2018 10-K on March 27 2019, the Company's independent auditor KPMG provided its opinion that Orion "maintained, in all material respects, effective internal control over financial reporting as of December 31, 2018…" Am. Compl. ¶¶ 65–66; 2018 10-K, A-288 (KPMG provided the same opinion in Orion's 2017 10-K, A-48).

Finally, even though the Company took a $4.3 million reserve on disputed accounts receivable, that amount is immaterial in light of Orion's overall financial position.[3] This lack of materiality negates Plaintiff's claim that the later statements demonstrate previous falsity.

An unanticipated change in expected conditions is not evidence that a previous related statement was untrue. Thus, the Company's announcements in the third quarter of 2018 and the first quarter of 2019 do not, as Plaintiff argues, demonstrate that earlier Company statements were misrepresentations (especially the earlier statements unrelated to later disclosures).

---

[3] Even if the $4.3 million reserve taken on accounts receivables were a corrective disclosure of a previous misstatement, dismissal would still be required because a $4.3 million receivables reserve is immaterial in light of the $114.924 million in receivables the Company disclosed in its second quarter 10-Q for 2018, A-143. *See Prause v. TechnipFMC, PLC,* 2019 U.S. Dist. LEXIS 44230, at *12 (S.D. Tex. Jan. 18, 2019) and *In re Franklin Bank Corp. Sec. Litig.,* 782 F. Supp. 2d 364, 408 (S.D. Tex. 2011) (recognizing parties' agreement that difference of 5% or less between untrue statement and true statement immaterial as matter of law).  *See also In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 854 (N.D. Tex. 2005) (rejecting plaintiffs' "fraud by hindsight claims" regarding scienter and also noting a company "is not required to set its reserve at any predetermined percentage of receivables… Plaintiffs do not allege facts showing that the estimates for bad debt and allowances for doubtful accounts were unreasonable when made; nor do the confidential witness statements address these issues.") (citing *Stack v. Lobo*, 903 F. Supp. 1361, 1368 (N.D. Cal. 1995)).

> ### 2. *Confidential Witnesses' Allegations Fail to Demonstrate Actionable Misrepresentations.*

The confidential witness accounts likewise fail to demonstrate misrepresentations. First, as with his argument about later disclosures demonstrating previous false statements, Plaintiff does not relate the confidential witness allegations to the claimed misrepresentations. For instance, the Amended Complaint and Opposition make no effort to tie their allegations of improper revenue recognition to goodwill accounting and the Company's related announcements, and neither witness' job description involved determining impairment of goodwill. Similarly, their allegations and job descriptions do not relate to Company estimates on construction projects or ICFR.

More generally, the pleadings contradict the witnesses' accounts in several respects, thereby further diminishing their already-discounted value under Fifth Circuit precedent. First, the confidential witnesses claim Orion's revenue recognition practices were improper because they recognized revenue on uncompleted work and recognized revenue "significantly more than the Company had actually received" (Am. Compl. ¶¶30, 35), but Orion's 2017 10-K (quoted at Am. Compl. ¶ 24) explicitly contemplates both practices as standard elements of the percentage-of-completion accounting method.[4] Opp. at 9–10. Additionally, CW1 reported

---

[4] Effective at the start of 2018, Orion implemented a new revenue recognition standard in accordance with best practices the Financial Accounting Standards Board identified in Accounting Standards Update 2014-09, *Revenue from Contracts with Customers* (Topic 606). The Company previously announced the implementation of this standard, which **requires** recognizing revenue on partially completed work in excess of what the Company actually receives, in its 2017 10-K (at A-64) (emphasis added):

> This comprehensive new revenue recognition standard will supersede existing revenue guidance under U. S. GAAP. The standard's core principle is that a company will recognize revenue when it transfers promised goods or services to customers in an amount that reflects the consideration to which the company expects to be entitled in exchange for those goods or services. In doing so, **companies will need to use more judgment and make more estimates**, including identifying performance

her claims of fraud to KPMG and CW2 stated KPMG investigated claims of improper revenue recognition. Am. Compl. ¶¶ 32, 36. The 2018 10-K, however, contained the same unqualified KPMG opinions as 2017, attesting that Orion maintained compliance with GAAP and effective ICFR. 2018 10-K, A-287–289.[5]

Finally, the pleadings contradict the Company's two motivations for purportedly falsifying these records that the witnesses allege. CW1 claims that "the Company" falsified records so executives could receive their bonuses, but no named executive officers received bonuses in 2017 (for the third consecutive year) despite being eligible, and only Mr. Tabb received a bonus in 2018. Motion at 14. And although CW1 also alleges the Company falsified records to meet its debt covenants, the subsequent disclosures do not state an inability to meet debt covenants and more generally do not disclose any past improper revenue recognition practices at the Company as the confidential witnesses allege.[6]

Plaintiff does not address any of this in his Opposition, choosing simply to restate these allegations. The failure to provide any temporal or substantive connection between the confidential witness allegations and the alleged misrepresentations, and the instances in which the confidential witness allegations contradict themselves, lower the value of the confidential witnesses' statements

obligations in the contract, estimating the amount of variable consideration to include in the transaction price and allocating the transaction price to each separate performance obligation.

[5] Orion's independent auditors conducted their audits in accordance with the standards of the Public Company Accounting Oversight Board, which require auditors plan and perform audits to obtain reasonable assurance that a company's consolidated financial statements are free of material misstatement "whether due to error **or fraud**." *See* 2017 10-K, A-47; 2018 10-K, A-287 (emphasis added).

[6] Earlier this year (outside the Class Period), the Company amended its Credit Facility due to concerns it would not be in compliance with financial covenants, but the Company never announced a default. *See* Ex. 3 at 31.

{N3936459.1}                                                6

and refute Plaintiff's claimed misrepresentations. Instead, Orion's subsequent disclosures more plausibly suggest a company preemptively warning the public about impending negative news it did not previously expect to occur.

### B.    Safe Harbor Protects Orion's Tailored Disclaimers Regarding Risks.

Plaintiff interprets Defendants' motion to say that safe harbor can apply to present-tense statements.  Opp. at 11–13.  Defendants in their Motion at 23 did not suggest this, but instead argue that for courts to determine whether the safe harbor applies to forward-looking statements that a plaintiff alleges omitted material information, courts view the entire statement in question holistically  and will  not disregard the present statements of fact.[7]

Plaintiff's Opposition alleges Orion's disclaimers do not constitute meaningful cautionary language because they were "vague, generalized statements" that "could affect *any* company's financial well-being." Opp. at 13 (citing *In re Vivendi S.A. Sec. Litig.,* 838 F.3d 223, 247 (2d Cir. 2016)). Orion tailored its disclaimers to include risks specific to its specialty construction business, however, as the 2017 10-K (quoted at Am. Compl. ¶ 25) demonstrates:

> The revenue, cost and gross profit realized on such contracts can vary, sometimes substantially, from the original projections due to changes in a variety of factors, such as:
>
> - failure to properly estimate costs of engineering, design, material, equipment or labor;

---

[7] *See In re BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016) ("the plaintiff must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and **in context**.") (internal quotation omitted) (emphasis added). *See also Blockbuster* at 12-13 ("The PSLRA safe harbor is 'based on aspects of . . . the judicially created "bespeaks caution" doctrine.' H.R. CONF. REP. NO. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730, 742. The Fifth Circuit has characterized the bespeaks caution doctrine as merely reflecting 'the unremarkable proposition that **statements must be analyzed in context**.'") (quoting *Rubinstein v. Collins,* 20 F.3d 160, 167 (5th Cir. 1994).

- unanticipated technical problems with the structures or services being supplied by us, which may require that we spend our own funds to remedy the problem;
- **project modifications creating unanticipated costs**;
- differing site conditions;
- changes in the costs of equipment, materials, labor or subcontractors;
- our suppliers' or subcontractors' failure to perform;
- difficulties in our customers obtaining required governmental permits or approvals;
- changes in local laws and regulations;
- delays caused by **local weather conditions**; and
- **exacerbation of any one or more of these factors as projects grow in size and complexity**.

(emphasis added). These disclaimers are not generic; they are specifically relevant to Orion as a construction company informing the investing public about risks affecting its business.

On October 18, 2018, the Company announced it expected to report a revenue shortfall for the third quarter of 2018 due to unexpected changes in customer schedules and "continuous rain throughout its market areas" in Texas that delayed work on concrete projects. Am. Compl. ¶¶ 3, 49; Orion 8K, A-177 (filed October 24, 2018). Orion's warnings were not "kitchen-sink" disclaimers, but specific warnings tailored to its business that, unfortunately, came to pass.

### C.   Plaintiff Does Not Provide Compelling Inferences of Scienter.

The Opposition provides five areas it claims demonstrate Defendants' scienter: (1) Defendants' "admissions"; (2) the confidential witness accounts; (3) Defendant DeAlmeida's resignation; (4) Defendants' SOX certifications; and (5) Defendants' desire to comply with Orion's debt covenants. Whether considered separately or together, these grounds do not provide the required "compelling" inference of scienter. *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008) (citing *Tellabs* at 324).

{N3936459.1}                                   8

*1.      Subsequent Disclosures Do Not Evidence Scienter.*

First, the Company's announcement of bad news does not support scienter for the Individual Defendants in the same way it does not transform earlier projections into misrepresentations. The subsequent disclosures do not relate to the specifics of the alleged earlier misrepresentations (except regarding goodwill). And nowhere did the Company "admit" in the announcements that its earlier statements were false when made or that Individual Defendants had contemporaneous knowledge of falsity. *See Rosenzweig v. Azurix Corp.*, 198 F. Supp. 2d 862, 890–91 (S.D. Tex. 2002) (Lake, J.) ("[S]ubsequent disclosures of negative information do not give rise to a strong inference that defendants knew the statements were materially false or misleading *when made.*") (emphasis in original). The subsequent disclosures here do not allege scienter because they disclosed intervening events that frustrated earlier revenue projections and led to the impairment of goodwill. *Supra* at 1–4.

*2.      Confidential Witnesses' Accounts and Plaintiff's Allegations Regarding SOX Certifications Do Not Demonstrate Scienter Due to Group Pleading.*

Plaintiff engages in improper group pleading with respect to his confidential witness and SOX Certification scienter allegations.   To plead a sufficient inference of scienter, Plaintiff "must allege facts sufficient to raise a strong inference of scienter with respect to **each individual defendant**." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (emphasis added). Group allegations that "the defendants" or "the company" knew something do not provide compelling inferences of scienter. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). Plaintiff must provide details showing each Individual Defendant either knew that he was publishing materially false information at the time of publication, or was severely reckless in publishing that information. *Abrams v. Baker Hughes Inc.,* 292 F.3d 424, 432 (5th Cir. 2002).  Plaintiff fails to do any of this.

As to the confidential witness allegations, the witnesses claim Defendants willfully violated GAAP, but provide insufficient detail under the PSLRA to support their claims. For GAAP violations to support a securities fraud claim, a complaint must connect the alleged GAAP violations with a corresponding fraudulent intent of individual defendants by, for example: identifying who in particular instructed the employees not to make the accounting adjustments; the particular adjustments not made; how omission of those adjustments was improper in terms of reasonable accounting practices; and whether those adjustments were material in light of the company's overall financial position. *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522 (5th Cir. 1993) (5th Cir. 1993). But Plaintiff here pleads no similar details and relies instead on group pleading and insinuation. His allegations directly name only Mr. DeAlmeida, but even CW1's assertions about him fail to demonstrate a compelling inference of scienter.[8]

The Opposition and Amended Complaint camouflage group pleading within their confidential witness allegations by naming individuals, meeting dates, and specific projects, but without providing the required details for fraud-related claims. CW1's account generally invokes

---

[8] Plaintiff cites *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 815 (N.D. Ill. 2000) (Opp. at 9, f. 3) as support for his argument that the Amended Complaint's GAAP allegations are sufficiently detailed. That case, however, instead demonstrates the types of allegations necessary to state a claim that are absent from the confidential witness accounts and the Amended Complaint. There, plaintiff Chu alleged improper practices with greater detail than Plaintiff provides here, including allegations (at 818–819) that Sabratek and its accountants were:

> (1) recognizing revenue on "phony sales" of products to entities that had not ordered Sabratek products;
> (2) recognizing revenue on "inventory parking arrangements";
> (3) booking revenue on "consignment sales" where no bona fide purchase had been made;
> (4) backdating invoices for premature revenue recognition;
> (5) concealing substantial credits, discounts, and/or rebates offered to distributors; and
> (6) paying itself "consulting fees" for fictitious consulting services where no money ever exchanged hands and no invoices were ever generated.

Vice President of Accounting Kristy Norris, but resorts to group pleading in its claims of purported fraud with compound subjects like "Norris **and Orion**" and abrupt shifts to the passive voice: "CW1 stated that an accrual spreadsheet and the month-end workbook **were falsified** [by whom?] to support false journal entries to the general ledger"; "According to CW1, Assistant Controller Ashley Claypole used the spreadsheet to make general ledger entries, and the adjustments **were made** [by whom?] to book accruals to increase the Company's [EBITDA]." Am. Compl. ¶¶ 30–31 (emphasis added). Plaintiff improperly attributes these actions to all Defendants without sufficient basis.

Similarly, Plaintiff relates CW1 participated in a meeting with Mr. DeAlmeida in December 2017 involving a dredging project where "CFO DeAlmeida **and Orion**" were attempting to make an adjustment to recognize revenue on a partially completed project. Am. Compl. ¶ 33 (emphasis added). But despite twice invoking Mr. DeAlmeida's name in this *non sequitur* to CW1's primary claims, CW1's account concludes, "**Orion** made the adjustments," without identifying the individual who ultimately made or directed them. *Id.* (emphasis added). And, importantly, the confidential witnesses never allege any other Individual Defendant had knowledge of any improper revenue recognition. In fact, Plaintiff's recitation of CW2's allegations fails to name any Individual Defendants at all. Am. Compl. ¶¶ 35–36, Opp. at 7–9.

The Opposition continues the improper group pleading arguing that Defendants' SOX certifications add to scienter allegations. Plaintiff alleges that "Defendants" were severely reckless in signing the SOX certifications because, "among other things" (undisclosed in the Amended Complaint and Opposition), unnamed "Defendants" were falsifying Company records, improperly recognizing revenue on projects, and over-reporting revenue. But Plaintiff does not allege which Individual Defendants had knowledge of the purported wrongful

conduct. *See Plaisance v. Schiller,* 2019 U.S. Dist. LEXIS 42073, at *49-50 (S.D. Tex. Mar. 14, 2019) (Lake, J.) ("The person signing the certification must have had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other red flags, that the financial statements contained material misstatements or omissions.") (Court's brackets and internal quotation marks omitted) (quoting *Central Laborers' Pension Fund v. Integrated Electrical Services Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)). Plaintiff's group pleading regarding SOX certifications cannot support scienter without these details.

        3.       *Former CFO DeAlmeida's Resignation Does Not Demonstrate Scienter.*

Plaintiff claims the resignation of former Orion CFO DeAlmeida to take a new position at a different company adds to a strong inference of scienter. Opp. at 18. The Fifth Circuit, however, requires a stronger nexus between the alleged misrepresentations and subsequent resignation than Plaintiff provides here, as the cases Plaintiff cites demonstrate.

As noted by the magistrate's report in *Hall v. Rent-A-Ctr., Inc.*, the resignation of an official on its own is "unavailing as proof of the commission of fraud" without "specific evidence" indicating that the resigning officials knew of the alleged misconduct. *Hall v. Rent-A-Ctr., Inc.*, 2017 U.S. Dist. LEXIS 205959, at *101 (E.D. Tex. Oct. 19, 2017) (quoting *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 956 (S.D. Tex. Sept. 29, 2016) (citing *Southland*, 365 F.3d at 383 and *Abrams*, 292 F.3d at 434)).

In *Hall*, though, the court permitted consideration of resignations in its scienter analysis because of the company's subsequent statements that its operational challenges were "exacerbated under the previous management regime" and that the departures of the executives were "a change aimed at improving shareholder value." *Id.* at 101–102. In the other Fifth Circuit case cited by Plaintiff, *Kaltman v. Key Energy Servs., Inc.*, the executive did not resign; instead, the company terminated him for cause with an announcement from the board of directors that "transition to a

management led by an executive who was not involved in the subjects of the possible restatement of previous financial statements and the Audit Committee investigation" best served the interests of the company. *Kaltman v. Key Energy Servs.*, 447 F. Supp. 2d 648, 664 (W.D. Tex. 2006). Without these types of allegations, resignations coinciding with bad news are not *de facto* evidence of scienter. *See Azurix Corp.*, 198 F. Supp. 2d at 891 (S.D. Tex. 2002) (Lake, J.) (three executives' resignations 13 days, one day, and a "few weeks" after announcements of poor operating results did not support strong inference of scienter and noting "If anything, the defendants' resignations indicate that the struggling company no longer had faith in its executives. This does not raise a strong inference of scienter.").

Here, the Company's statements regarding Mr. DeAlmeida do not add to an inference of scienter because they do not provide specific evidence Mr. DeAlmeida knew of the alleged misconduct—to the contrary, Mr. Stauffer said in the Company's 8-K announcing Mr. DeAlmeida's departure that "I am very grateful to Chris [DeAlmeida] for helping Orion grow into the strong Company it is today. Over the past 11 years, Chris has served Orion with strong leadership and integrity." A-170. Similarly, Mr. DeAlmeida stated "While timing is not ideal, this announcement has no correlation to the Company's preliminary third quarter 2018 results." *Id.*

### 4. *Defendants' Purported Desire to Comply with Debt Covenants Does Not Provide a Compelling Scienter Inference.*

Plaintiff also argues that Defendants' supposed desire to ensure compliance with the Company's debt covenants adds to a compelling inference of scienter because the Fifth Circuit recognizes that a company can be "particularly motivated" to comply with debt covenants or maintain a credit rating (normally an impermissible consideration because that motivation is universally held by all corporations and their executives). Opp. at 20. But Plaintiff does not identify the debt covenants Orion was supposedly concerned about breaching or why Orion

was concerned, or how those covenants relate to the alleged false statements. The Fifth Circuit requires this context for the narrow exception to apply, as the *Ramirez* and *Shaw* cases cited at Opp. 20 demonstrate.

In *Ramirez*, the Northern District of Texas applied the exception because Defendant ExxonMobil had offered the largest debt offering in its history due to its "dire financial need" of a capital infusion amid collapsing oil prices and an inability to pay shareholder dividends, which made the Company's credit rating "uniquely important." *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018). These exceptional circumstances permitted the court to consider motive to maintain credit rating as one factor supporting scienter.

On the other hand, in *Shaw* (cited by *Ramirez*) the Fifth Circuit considering defendants' scienter rejected plaintiff's evidence that defendants refused to write off impaired goodwill because they feared an impact on debt covenants and credit rating: "The desire to maintain a high credit rating is universally held among corporations and their executives and consequently does not contribute significantly to an inference of scienter." *Shaw*, 537 F.3d at 544 (5th Cir. 2008) (citing *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 664 (8th Cir. 2001)).

Because the Amended Complaint does not identify the debt covenants or explain how they make for exceptional circumstances, the narrow exception available in *Ramirez* cannot apply to demonstrate scienter. Instead, the pleadings' facts more plausibly demonstrate executives who issued timely public warnings about, and realization of, risks to a business.

**D.    Plaintiff Does Not Satisfy Loss Causation Requirements.**

Regarding loss causation, Defendants do not urge a "fact-for-fact" standard as Plaintiff argues (Opp. at 23).  This Court summed up the correct standard earlier this year:

> Under the PSLRA Plaintiffs must prove that a defendant's act or omission alleged to have violated federal securities laws "caused the loss for which the plaintiff seeks to recover damages." 15

U.S.C. § 78u-4(b)(4). In *Dura Pharmaceuticals*, 125 S. Ct. at 1633-34, the Supreme Court held that loss causation incorporates traditional elements of proximate causation and economic loss. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 133 S. Ct. 1184, 1192, 185 L. Ed. 2d 308 (2013) (confirming that loss causation continues to be an element of a claim under § 10(b)). Loss causation refers to a direct link between the misstatement and a plaintiff's loss, and generally requires a corrective disclosure relating to the challenged representations, followed by a decline in the stock's price. *See Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir. 2008) ("Plaintiffs must allege . . . that the market reacted negatively to a corrective disclosure, which revealed the falsity of [defendant's] previous representations regarding the accounting for its stock options.").

*Plaisance*, at *65–66 (S.D. Tex. Mar. 14, 2019) (Lake, J.) (brackets/ellipsis added by this Court).

Here, Defendants argue that Plaintiff fails to identify any actionable misrepresentation because he does not demonstrate why the statements were false when made. *Supra* at 1–7. But even assuming the previous statements' falsity *arguendo*, none of the purportedly corrective disclosures that Plaintiff identifies "reveals" an earlier lack of ICFR, improper revenue recognition, or inability to meet financial covenants. And, the $4.3 million reserve taken on accounts receivable is immaterial in light of Orion's overall financial position. *Supra* at 4. On loss causation grounds, these allegations require dismissal.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint fails to state a claim and should be dismissed with prejudice.

Respectfully submitted,

*/s/ Robert B. Bieck, Jr*

ROBERT B. BIECK, JR.
TX Bar No. 02300600
SDTX No. 13148
JONES WALKER, LLP

{N3936459.1}                                                    15

201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8202
Fax: (504) 589-8202
Email: rbieck@joneswalker.com

ALEXANDER N. BRECKINRIDGE V
SDTX No. 3408032
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8138
Fax: (504) 589-8583
Email: abreckinridge@joneswalker.com

THOMAS E. SLATTERY
LA Bar No. 36944 (*Admitted Pro Hac Vice*)
JONES WALKER, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170
Phone: (504) 582-8724
Fax: (504) 589-8724
Email: tslattery@joneswalker.com

JAMES ARDOIN
TX Bar No. 24045420
SDTX No. 571281
JONES WALKER, LLP
811 Main Street, Suite 2900
Houston, TX 77002
Phone: (713) 437-1811
Fax: (713) 437-1946
Email: jardoin@joneswalker.com

**ATTORNEYS FOR DEFENDANTS
ORION GROUP HOLDINGS, INC., MARK R.
STAUFFER, CHRISTOPHER J. DEALMEIDA,
AND ROBERT L. TABB**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of the above and foregoing filed via the CM/ECF system, which caused service upon all parties on December 16, 2019.

*/s/ Robert B. Bieck, Jr.*

{N3936459.1}                                   16