## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JOHN HECK, Individually and On Behalf of All Others Similarly Situated, | Case No. 4:19-cv-01337 |
| Plaintiff, | **PLAINTIFF'S SURREPLY IN RESPONSE TO DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** |
| v. | |
| ORION GROUP HOLDINGS, INC., MARK R. STAUFFER, CHRISTOPHER J. DEALMEIDA, and ROBERT L. TABB, | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT.. 2

    A.    Plaintiff Adequately Alleges Falsity ........................................................... 2

    B.    Plaintiff Adequately Alleges Scienter ..................................................... 8

    C.    Plaintiff Adequately Alleges Loss Causation........................................... 12

    D.    Plaintiff Adequately Alleges Control Person Liability ........................................... 14

III.  CONCLUSION.................................................................................................... 15

## TABLE OF AUTHORITIES

CASES

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ........................................................................................ 7

*Alaska Elec. Pension Fund v. Asar*,
  768 F. App'x 175 (5th Cir. 2019) ............................................................................... 10

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ..................................................................................... 14

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).................................................................................................... 4

*Bielousov v. GoPro, Inc.*,
  No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017)................................ 10, 11

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................. 12, 13

*Hall v. Rent-A-Ctr., Inc.*,
  No. 4:16CV978, 2017 WL 6398742 (E.D. Tex. Oct. 19, 2017)................................................ 10

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)..................................................................... 11

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)....................................................................... 10

*In re BP p.l.c. Sec. Litig.*,
  No. 4:10-md-2185, 2012 WL 432611 (S.D. Tex. Feb. 13, 2012)................................................ 8

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017)......................................................................... 6

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006) ..................................................... 11

*In re St. Jude Medical, Inc. Sec. Litig.*,
  Civil No. 10-0851 (SRN/TNL), 2011 WL 6755008 (D. Minn. Dec. 23, 2011) ........................ 5

*Jones v. Cain*,
  600 F.3d 527 (5th Cir. 2010) ....................................................................................... 5

*Jones v. Corus Bankshares, Inc.*,
    701 F. Supp. 2d 1014 (N.D. Ill. 2010) ................................................................................ 4

*Kaltman v. Key Energy Services, Inc.*,
    447 F. Supp. 2d 648 (W.D. Tex. 2006) ................................................................................ 11

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ....................................................................................... *passim*

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ............................................................................................ 10

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
    927 F. Supp. 1297 (C.D. Cal. 1996) .................................................................................... 5

*Masel v. Villarreal*,
    924 F.3d 734 (5th Cir. 2019) .................................................................................... 3, 4, 9

*MicroCapital Fund LP v. Conn's Inc.*,
    No. 4:18-CV-1020, 2019 WL 3451153 (S.D. Tex. July 24, 2019) ...................................... 7, 9

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
    898 F.3d 461 (5th Cir. 2018) ............................................................................................ 15

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) ............................................................................................ 11

*Prause v. TechnipFMC, PLC*,
    No. 4:17-CV-02368, 2019 WL 1211428 (S.D. Tex. Jan. 18, 2019) ...................................... 6

*Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ............................................................................................ 14

*Ramirez v. Exxon Mobil Corp.*,
    334 F. Supp. 3d 832 (N.D. Tex. 2018) ......................................................................... 11, 12

*Ret. Sys. v. Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012) ................................................................................. 6

*Rougier v. Applied Optoelectronics, Inc*,
    No. 4:17-CV-2399, 2019 WL 6111516 (S.D. Tex. Mar. 27, 2019) ................................ *passim*

*SEC v. Mozilo*,
    No. CV 09-3994-JFW MANX, 2010 WL 3656068 (C.D. Cal. Sept. 16, 2010) ....................... 4

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F. 3d 190 (2d Cir. 2008) ................................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................. 12

*TSC Indus. v. Northway, Inc.*,
   426 U.S. 438 (1976) ................................................................................................... 6

*United States v. Erickson*,
   601 F.2d 296 (7th Cir.) .............................................................................................. 5

*Valley Cattle Co. v. United States*,
   258 F. Supp. 12 (D. Haw. 1966) ........................................................................... 4, 5

*Wieland v. Stone Energy Corp.*,
   Civil Action No. 05-2088, 2007 WL 2903178 (W.D. La. Aug. 17, 2007) .......................... 3, 11

STATUTES

15 U.S.C. §78u-4(b)(4) ......................................................................................................... 12

Pursuant to the parties' Unopposed Motion to Extend Reply Brief Deadline (Doc. 28), Plaintiff John Heck ("Plaintiff") hereby files this Surreply in Response to Defendants' Reply in Support of Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, Motion for More Definite Statement.

## I.   INTRODUCTION

Between March 13, 2018 and March 26, 2019, inclusive ("Class Period"), Defendants made false and misleading statements that, among other things: (1) the goodwill for Orion Group Holdings, Inc. ("Orion" or the "Company") was not impaired; (2) there existed no doubtful accounts that required the recording of an allowance; (3) the Company was in compliance with all financial covenants and expected to meet its future internal liquidity and working capital needs; (4) the Company's estimates on construction projects and reserves on certain customer disputed accounts receivables were reasonable; and (5) Orion disclosed any material changes to the Company's internal control over financial reporting.[1]

Pursuant to the Securities Exchange Act of 1934 ("Exchange Act"), Plaintiff adequately alleges that Defendants' statements were false and misleading.  For instance, Plaintiff alleges that Confidential Witness ("CW")1 – who served as Regional Controller at Orion from April 2017 to March 2018 – stated that Orion was engaged in booking revenue accruals and cost accruals for all regions without supporting documentation.  CW1 stated further that CFO DeAlmeida – who suspiciously resigned *on the same day* as Orion's announcement of a significant revenue shortfall – was involved in the falsification of the Company's accrual spreadsheet and the month-end workbook.  Plaintiff also alleges that CW2 – who served as

---

[1]    Defendants are Orion, Chief Executive Officer ("CEO") Mark R. Stauffer ("Stauffer"), Chief Financial Officer ("CFO") Robert L. Tabb ("Tabb"), and former CFO Christopher J. DeAlmeida ("DeAlmeida") ("Defendants").  Defendants Stauffer, Tabb, and DeAlmeida are the "Individual Defendants."

Orion's Division Controller for the Company's Marine Group from October 2017 to March 2018 – stated that the revenue that Orion had been reporting was significantly more than the Company had actually received.  Plaintiff further alleges that Defendants' improper booking of revenue accruals and costs accruals without supporting documentation, falsification of the Company's accrual spreadsheet and month-end workbook, and reporting significant more revenue than the Company actually received, were all related to the Company's announcement of a significant revenue shortfall for the third quarter of 2018 and the Company's subsequent disclosures.

Contrary to Defendants' assertions within Defendants' Reply to Plaintiff's Opposition to Their Motion to Dismiss ("Reply"), Plaintiff has adequately stated a claim under the Exchange Act.  Accordingly, the Court should deny Defendants' Motion to Dismiss Amended Complaint or in the Alternative, Motion for More Definite Statement ("Motion").

## II.  PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

### A.  Plaintiff Adequately Alleges Falsity

As demonstrated within Plaintiff's Opposition to Defendants' Motion to Dismiss Amended Complaint or in the Alternative, Motion for More Definite Statement ("Opposition"), Plaintiff adequately alleges that Defendants made false and misleading statements regarding the Company's goodwill, doubtful accounts, estimates on construction projects and customer disputed accounts receivable.  For instance, on March 13, 2018, Defendants stated, among other things, that "we determined that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill was not impaired, and no events have occurred since that date that would require an interim impairment test."  ¶22.[2]  Defendants also represented that "no indicators of goodwill impairment were identified" throughout the

---

[2]   Unless otherwise specified, all paragraph citations ("¶") are to Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint").

2

Class Period.   ¶¶39, 45.   With respect to allowance for doubtful accounts, Defendants represented that "[a]s of December 31, 2017 and 2016, the Company had not recorded an allowance for doubtful accounts."   ¶23.   Contrary to these representations, the Company announced that it expected a significant revenue shortfall for third quarter 2018.   ¶49-51. Defendants also falsely represented that Orion's internal controls over financial reporting were adequate and that the Company's financial statements fairly presented, in all material respects, the financial condition and results of operations of the Company. ¶¶27, 40, 46, 58, 60; *see Wieland v. Stone Energy Corp.*, Civil Action No. 05-2088, 2007 WL 2903178, at *7 (W.D. La. Aug. 17, 2007) ("Plaintiffs have also sufficiently alleged that the Sarbanes-Oxley certifications that [defendants] signed in connection with [the company's] quarterly reports contained false and misleading information.").[3]

Defendants' arguments in their Reply do not support their contention that Plaintiff has failed to adequately plead falsity.  For example, Defendants cite to *Masel v. Villarreal*, 924 F.3d 734 (5th Cir. 2019) to assert that unlike in *Masel*, "Defendants' statements disclosing impairment, revenue shortfall, and a late-filed 10-K reflect a company coming forward to disclose unexpected circumstances that intervened to impair Company goodwill, delay a public filing, and produce financial losses."  Reply at 2-3.  Defendants' argument is unavailing for several reasons.

First, Defendants' disclosures came near or at the end of the Class Period.   ¶¶49-65. Accordingly, Defendants deprived investors of the ability to asses this information in the total of mix information in making their investment decisions earlier during the Class Period – before the

---

[3]   Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

Company's stock price plummeted.  ¶¶53, 61, 63; *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

Second, as numerous courts have recognized, "the fact that [the company] disclosed certain of its difficulties during the class period does not necessarily negate an inference of scienter, for [the company's] statements may still have been intended to conceal the fact that its condition was substantially worse than its statements suggested." *Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1025 (N.D. Ill. 2010); *see also SEC v. Mozilo*, No. CV 09-3994-JFW MANX, 2010 WL 3656068, at *19 (C.D. Cal. Sept. 16, 2010) (holding that a company's disclosures were insufficient to negate an inference of scienter "especially given that the disclosures were incomplete, interspersed with misleading statements, scattered among various SEC filings and earnings calls, and buried in thousands of pages of prospectus supplements"). Finally, *Masel* actually **supports** Plaintiff's position that "evidence of later events can provide useful circumstantial evidence that a given representation was false when made." *Masel*, 924 F.3d at 750 (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009)).[4]

---

[4]     Defendants seek judicial notice of exhibits to argue that "record-breaking" rain caused significant production delays in Orion's Texas market areas.  Reply at 3; Exs. 1-2.  Plaintiff objects to Defendants' request for judicial notice because: (1) the exhibits suggest rainfall totals for Dallas and Houston generally without providing specific information regarding rainfall totals in the precise locations for Orion's operations (*see Valley Cattle Co. v. United States*, 258 F. Supp. 12, 17 (D. Haw. 1966) ("Torrential rains, in very localized spots, commonly called cloud bursts, can and do often occur in and over very narrow areas.")); and (2) the exhibits do not demonstrate whether or not the rainfall was sufficiently intense to disrupt Orion's operations on particular days.  Even if the Court were able to take judicial notice of Defendants' exhibits, moreover, the rainfall amounts are not as "record-breaking" as Defendants suggest.  For example, the exhibits suggest that the rainfall total for Houston in September 2018 (8.60 inches) was **significantly less** than the rainfall totals in certain previous years for September: (2008: 12.07 inches); (2001: 8.82 inches) (1998: 10.16 inches); (1979: 9.83 inches); (1976: 11.35 inches); (1973: 9.38 inches); (1958: 11.74 inches); (1957: 9.37 inches); (1919: 8.68 inches); (1913: 13.37 inches) and (1896: 9.93 inches).  Reply, Ex. 2.  Similarly, the exhibits suggest that the rainfall total for Houston in October 2018 (7.02) was **significantly less** than the rainfall totals in certain previous years for October: (2015: 13.05 inches); (2013: 7.08 inches); (2009: 13.16

Defendants also contend that Orion's late 2018 10-K filing "does not evidence a prior actionable misrepresentation" because KPMG purportedly provided a clean audit opinion for the Company.  Reply at 4.  Courts, however, have repeatedly rejected this argument.  *See, e.g.*, *United States v. Erickson*, 601 F.2d 296, 305 (7th Cir.), *cert. denied*, 444 U.S. 979 (1979) ("If a company officer knows that the financial statements are false or misleading and yet proceeds to file them, the willingness of an accountant to give an unqualified opinion with respect to them does not negate the existence of the requisite intent or establish good faith reliance."); *In re St. Jude Medical, Inc. Sec. Litig.*, Civil No. 10-0851 (SRN/TNL), 2011 WL 6755008, at *7 (D. Minn. Dec. 23, 2011) (holding that the fact that the company's "independent outside auditor issued an unqualified audit opinion in each of the relevant years" does "not preclude a claim for securities fraud"); *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1314 n.13 (C.D. Cal. 1996) ("The fact that Chantal's independent auditor may have approved the accounting methods will not shield Chantal from liability for deception such methods may have caused.").

Defendants also assert – for the first time in their Reply –  that "even though the Company took a $4.3 million reserve on disputed accounts receivable, that amount is immaterial in light of Orion's overall financial position."  Reply at 4.  As the Fifth Circuit has declared, however, "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).  Even if the Court were to consider this argument,

inches); (2008: 8.67 inches); (2006: 14.53 inches); (2002: 14.65 inches); (2001: 8.95 inches); (1998: 7.79 inches); (1997: 7.11 inches); (1994: 10.62 inches) (1984: 16.05 inches); (1973: 9.31 inches); (1970: 9.09 inches); (1960: 10.85 inches); (1949: 17.64 inches); (1941: 10.23 inches); (1930: 7.57 inches); (1920: 9.04 inches); (1919: 9.72 inches); (1918: 8.44 inches); (1913: 9.86 inches); (1909: 8.22 inches); (1907: 9.89 inches); (1890: 7.36 inches).  *Id*.  The exhibits also suggest that the rainfall total in 2018 for Fort Worth/Dallas was *less than* the total rainfall just three years earlier in 2015, and that the rainfall totals in September and October 2018 were *less than* the total rainfall received in May 2015.  Reply, Ex. 1.

moreover, "[o]nly if the established omissions are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law . . . ." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *see also Prause v. TechnipFMC, PLC*, No. 4:17-CV-02368, 2019 WL 1211428, at *5 (S.D. Tex. Jan. 18, 2019) ("Materiality is a mixed question of law and fact which is usually decided by the trier of fact unless the misrepresentations are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality.").  Such is not the case here, particularly where Defendants have failed to analyze the factors enumerated within Securities and Exchange Commission ("SEC") Staff Accounting Bulletin No. 99 ("SAB 99") to the issue of materiality.  SEC Staff Accounting Bulletin ("SAB") No. 99, 64 Fed. Reg. 45150, 45152 (1999); *see also In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 465–66 (S.D.N.Y. 2017) ("the significant volatility" of the company's stock price "considered in aggregate with other [SEC Staff Bulletin No. 99 ("SAB 99")] factors preclude the conclusion that the alleged misstatements and omissions related . . . were so obviously unimportant to a reasonable investor to be immaterial"); *City of Pontiac Gen. Empls.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 368 (S.D.N.Y. 2012) ("Indeed, even [SAB 99] notes that the 5% threshold is merely a rule of thumb and that materiality cannot be reduced to a numerical formula.").

Defendants also claim that "the Amended Complaint and Opposition make no effort to tie their allegations of improper revenue recognition to goodwill accounting and the Company's related announcements, and neither witness' job description involved determining impairment of goodwill."  Defendants are incorrect.  For instance, Plaintiff alleges that CW1 – who served as Regional Controller at Orion from April 2017 to March 2018 – stated that Orion was engaged in booking revenue accruals and cost accruals for all regions without supporting documentation.

6

¶30. CW1 stated further that CFO DeAlmeida – who coincidentally resigned *on the same day* as Orion's announcement of a significant revenue shortfall – was involved in the falsification of the Company's accrual spreadsheet and the month-end workbook. ¶31. Plaintiff also alleges that CW2 – who served as Orion's Division Controller for the Company's Marine Group from October 2017 to March 2018 – stated that the revenue that Orion had been reporting was significantly more than the Company had actually received. ¶35. Plaintiff alleges that Defendants' improper booking of revenue accruals and costs accruals without supporting documentation, falsification of the Company's accrual spreadsheet and month-end workbook, and reporting significant more revenue than the Company actually received, were all related to the Company's announcement of a significant revenue shortfall for the third quarter of 2018 and the Company's subsequent disclosures. ¶¶49-66. Contrary the Defendants' assertion, moreover, the CWs "are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information pleaded." *Rougier v. Applied Optoelectronics, Inc*, No. 4:17-CV-2399, 2019 WL 6111516, at *11 (S.D. Tex. Mar. 27, 2019); *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002); *MicroCapital Fund LP v. Conn's Inc.*, No. 4:18-CV-1020, 2019 WL 3451153, at *15 (S.D. Tex. July 24, 2019).[5]

Plaintiff's Opposition also demonstrates that Defendants have not satisfied their burden of demonstrating that the safe harbor provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") insulates their false and misleading statements because: (1) the provision does not apply to Defendants' statements of current or historical fact; (2) Defendants' disclaimers do

---

[5]    Defendants claim that Orion's implementation of a new revenue recognition standard purportedly contradicts the CWs' accounts. Reply at 5. Defendants are mistaken. The CW allegations – such as the allegation that Defendants reported significant more revenue than the Company actually received – comports with the Company's announcement of a significant revenue shortfall for the third quarter of 2018. ¶¶35, 49.

7

not constitute meaningful cautionary language because they were vague, generalized statements that were not tailored to the specific risks alleged; (3) Defendants' statements failed to warn investors that the risks alleged had already materialized and were of greater magnitude than portrayed; and (4) the application of the safe harbor provision is not so obvious as to be decided as a matter of law. *Lormand*, 565 F.3d at 244-45.  Despite Defendants' assertion in their Reply (Reply at 7-8), vaguely claiming that revenue "can vary" based upon "project modifications creating unanticipated costs" or "local weather conditions" fails to satisfy the "requirement for meaningful cautions" constituting "company-specific warnings based on a realistic description of the risks applicable to the particular circumstances, not merely a boilerplate litany of generally applicable risk factors." *Lormand*, 565 F.3d at 244-45.

### B.      Plaintiff Adequately Alleges Scienter

Plaintiff's Opposition also demonstrates that Plaintiff has adequately alleged scienter under the Exchange Act.  The arguments that Defendants raise in their Reply do not demonstrate otherwise.

First, Defendants' admissions constitute powerful evidence of Defendants' scienter.  *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, No. 4:10-md-2185, 2012 WL 432611, at *56 (S.D. Tex. Feb. 13, 2012) (holding that CEO's "own admissions" contributed to a strong inference of scienter).  As Plaintiff noted in the Opposition, Defendants admitted: (1) that the Company expected a significant revenue shortfall for third quarter 2018 due to production delays and that Orion may perform an interim goodwill impairment test (¶49-51); (2) reported revenue of $125.1 million, a $6.36 million net loss, $69.48 million in goodwill, and $81.18 million in accounts receivable (¶57); (3) that it was not more likely than not that an impairment existed at either reporting unit (*Id.*); (4) "extended evaluations of goodwill impairment testing and income tax adjustments,

8

among other things" that would generate a net loss (¶60); and (5) a $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge.  ¶62.  These admissions directly contradict Defendants' representations during the Class Period that "we determined that the estimated fair value of each reporting unit exceeded its respective carrying values as of October 31, 2017, goodwill was not impaired, and no events have occurred since that date that would require an interim impairment test" (¶22), "no indicators of goodwill impairment were identified" (¶¶39, 45), and "[a]s of December 31, 2017 and 2016, the Company had not recorded an allowance for doubtful accounts."  ¶23.  Thus, "the admissions by the individual defendants, as alleged in the complaint, directly and cogently tend to prove their state-of-mind at the time of their misleading statements and omissions, *i.e.*, they are evidence that the defendants actually knew earlier that the course of action would turn out badly."  *Lormand*, 565 F.3d at 254.  Indeed, as noted above, Defendants' own authority ***supports*** Plaintiff's position that "evidence of later events can provide useful circumstantial evidence that a given representation was false when made."  *Masel*, 924 F.3d at 750.

Second, the accounts of the CWs alleged in the Complaint add to the strong inference of scienter alleged.  ¶¶29-36; *Rougier*, 2019 WL 6111516.  Defendants claim that Plaintiff fails to demonstrate scienter with respect to the Individual Defendants (Reply at 9), but Defendants ignore the allegations in the Complaint.  For instance, CW1 stated that CFO DeAlmeida was involved in the falsification of the Company's accrual spreadsheet and the month-end workbook.  ¶31.  Although Defendants suggest that Plaintiff relies upon group pleading (Reply at 9-11), "[t]he fact that [some] allegations pertain to more than one person does not make them group pleading[,] particularly where, as here, it is sufficiently clear from the face of the complaint which scienter allegations apply to each Individual Defendant."  *MicroCapital*, 2019

9

WL 3451153, at *17 n.33; *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 184–85 (5th Cir. 2019); *Rougier*, 2019 WL 6111516, at *12. Defendants also engage in semantics about the passive voice to suggest that Plaintiff has not adequately alleged scienter with respect to certain allegations. Reply at 10-11. Even if Defendants were correct in their characterization, however, (and they are not), Defendants fail to recognize that "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008); *see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F. 3d 190, 195 (2d Cir. 2008) ("it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant").[6]

Third, the announcement of CFO DeAlmeida's resignation ***on the same day*** as the Company's announcement of a significant revenue shortfall adds to the strong inference of scienter alleged. Although Defendants contend that the Company's announcement does not "provide specific evidence Mr. DeAlmeida knew of the alleged misconduct (Reply at 13)," Defendants completely ignore the allegation that CFO DeAlmeida was involved in the falsification of the Company's accrual spreadsheet and the month-end workbook. ¶31. These allegations, therefore, bolster the strong inference of scienter alleged. *Bielousov v. GoPro, Inc.*, No. 16-cv-06654-CW, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017); *Hall v. Rent-A-Ctr., Inc.*, No. 4:16CV978, 2017 WL 6398742, at *34 (E.D. Tex. Oct. 19, 2017), *report and*

---

[6]    Defendants also suggest that Plaintiff provides "insufficient detail under the PSLRA to support their claims" regarding violations of Generally Accepted Accounting Principles. Reply at 10. However, "[n]either the PSLRA nor Rule 9(b) requires a plaintiff to reconstruct a company's financial affairs in greater detail than the corporation's own auditors were able to achieve." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 487 (S.D.N.Y. 2004).

10

*recommendation adopted,* No. 4:16CV978, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017); *Kaltman v. Key Energy Services, Inc*., 447 F. Supp. 2d 648, 664 (W.D. Tex. 2006).

Fourth, Defendants' certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") SOX also add to the strong inference of scienter alleged. SOX certifications properly add to the scienter calculus because such certifications require executives "to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov*, 2017 WL 3168522, at *7. Plaintiff alleges that Defendants were severely reckless in signing the SOX certifications because, among other things, Defendants were falsifying the Company's accrual spreadsheet and month-end workbook, improperly recognizing revenue on projects beyond what was authorized on the Company's contracts, and reporting significantly more revenue than the Company had actually received. ¶¶28-37. Defendants fail to address Plaintiff's authorities that demonstrate that such allegations support an inference of scienter. *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 724 (W.D. Tex. 2010); *Wieland*, 2007 WL 2903178, at *7; *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2006 WL 3747560, at *22 (E.D. La. Dec. 14, 2006).

Finally, Defendants' desire to comply with Orion's debt covenants further supports a strong inference of scienter. *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018). CW1 stated that Orion was engaged in improper revenue recognition to enable the Company to meet its debt covenants. ¶¶30-33. Indeed, Defendants acknowledge that "the Company amended its Credit Facility due to concerns it would not be in compliance with financial covenants . . . ." Reply at 6 n.6. These allegations, therefore, add to the strong inference of scienter alleged. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004) (holding that allegations that defendants "were motivated to engage in fraud in order to

11

forestall [the company's] default of its bank loan agreement and to preserve the Company's ability to borrow pursuant to its credit facility" are "probative of scienter").

"The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-22 (2007) (italics in original). Under this standard, Plaintiff has adequately alleged scienter.

### C.    Plaintiff Adequately Alleges Loss Causation

The PSLRA provides that "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. §78u-4(b)(4). To adequately plead loss causation, a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

As noted within Plaintiff's Opposition – and which Defendants do not dispute – a plaintiff need only comply with the notice pleading requirements of Rule 8 to adequately allege loss causation. *Lormand*, 565 F.3d at 258; *see also Rougier*, 2019 WL 6111516, at \*13 ("Notably, this element of a Section 10(b) claim need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief and provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *Ramirez*, 334 F. Supp. 3d at 858 ("The pleading standard for loss causation is not heightened as it is with scienter but is only the plausibility standard."). Thus, the pleading requirements for loss causation "are not meant to impose a great burden upon a plaintiff." *Dura*, 544 U.S. at 347.

As demonstrated within Plaintiff's Opposition, Plaintiff has adequately alleged loss causation. Specifically, Plaintiff alleges that on October 18, 2018, the Company announced that

12

it expected a significant revenue shortfall for third quarter 2018 due to production delays. ¶¶49-53, 78-79.  On the same day, Orion also announced the resignation of CFO DeAlmeida.  *Id.*  On this news, the Company's share price fell $0.68, or over 10%, to close at $6.11 per share on October 18, 2018, on unusually heavy trading volume.  *Id.*  On March 18, 2019, Orion revealed that the Company would be unable to timely file its annual report due to "extended evaluations of goodwill impairment testing and income tax adjustments, among other things."  ¶¶60-61, 80-81.  The Company also announced that it "expects that a significant change in results of operations from the corresponding period for the last fiscal year will be reflected in its financial statements."  *Id.*  On this news, the Company's share price fell $0.52, or over 12%, to close at $3.72 per share on March 18, 2019, on unusually heavy trading volume.  *Id.*  Plaintiff also alleges that on March 26, 2019, the Company reported $94.4 million net loss for the fourth quarter 2018 due to certain non-cash charges, including a $69.5 million goodwill impairment charge.  ¶¶62-63, 82-83.  On this news, the Company's share price fell $0.22, or nearly 7%, to close at $2.97 per share on March 26, 2019, on unusually heavy trading volume.  *Id.*  These allegations provide Defendants "with some indication of the loss and the causal connection that the plaintiff has in mind."  *Dura*, 544 U.S. at 347.

Although Defendants contend in their Reply that they "do not urge a fact-for-fact standard" to assess loss causation, Defendants then do exactly that when they suggest that "none of the purportedly corrective disclosures that Plaintiff identifies reveals an earlier lack of ICFR [internal controls for financial reporting], improper revenue recognition, or inability to meet financial covenants."  Reply at 14-15.  First, as illustrated within Plaintiff's Opposition, Plaintiff has adequately alleged "a facially plausible causal relationship between the fraudulent statements or omissions and plaintiff's economic loss."  *Lormand*, 565 F.3d at 258.  Plaintiff alleged that

13

Defendants' representations regarding Orion's goodwill, doubtful accounts, compliance with financial covenants, expectations to meet Orion's future internal liquidity and working capital needs, estimates on construction projects and reserves on certain customer disputed accounts receivables, and the Company's internal control over financial reporting all *related* to the Company's disclosures between October 2018 and March 2019.  ¶¶49-66; 76-84.

Second, as noted within Plaintiff's Opposition, *Dura* did not confine the "relevant truth" to explicit identification of the earlier misrepresentations alleged.  The Fifth Circuit has declared that to be corrective, a disclosure need only relate to the alleged misrepresentation – it need not precisely mirror the earlier misrepresentation.  *Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014).  If "a fact-for-fact disclosure were required to establish loss causation, a defendant could defeat liability by refusing to admit the falsity of its prior misstatements."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009).  Because the "First Amended Complaint sets forth the specific statements that relate to Defendants' previous statements and how the marketplace perceived these corrective disclosures," Plaintiff's allegations "satisfy Rule 8(a) in pleading loss causation."  *Rougier*, 2019 WL 6111516, at *13.

### D.     Plaintiff Adequately Alleges Control Person Liability

As demonstrated above and within Plaintiff's Opposition, Plaintiff has adequately pled a primary violation.  Plaintiff has also sufficiently alleged the Individual Defendants' control over the Company.  ¶¶17-20; 103-06.  Thus, Plaintiff has adequately alleged a control person claim under Section 20(a) of the Exchange Act.  *Rougier*, 2019 WL 6111516, at *14.

14

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.  Alternatively, if the Court grants any portion of the Motion, Plaintiff respectfully requests leave to amend. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477-78 (5th Cir. 2018).

Dated:  December 30, 2019                GLANCY PRONGAY & MURRAY LLP


By:  *s/ Ex Kano S. Sams II*
Lionel Z. Glancy
Robert V. Prongay
Ex Kano S. Sams II
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: esams@glancylaw.com

Joe Kendall
Texas Bar No. 11260700
KENDALL LAW GROUP, PLLC
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: 214-744-3000
Facsimile: 214-744-3015
Email: jkendall@kendalllawgroup.com

*Attorneys for Plaintiff John Heck*

15

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system of the United States District Court for the Southern District of Texas, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

16